# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2743
_____

United States of America,

*Plaintiff - Appellee,*

v.

Ranson Long Pumpkin,

*Defendant - Appellant.*

_____

No. 20-2770
_____

United States of America,

*Plaintiff - Appellee,*

v.

Moses Crowe,

*Defendant - Appellant.*

_____

Appeals from United States District Court
for the District of South Dakota - Western

_____

Submitted: October 22, 2021
Filed: December 30, 2022

_____

Before COLLOTON, SHEPHERD, and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Ranson Long Pumpkin and Moses Crowe were convicted of committing a carjacking resulting in serious bodily injury. Under a separate count, they were convicted of using and discharging a firearm during and in relation to a crime of violence, the carjacking. Crowe was also convicted of unlawful possession of a firearm as a convicted felon. Long Pumpkin and Crowe appeal and raise several issues. We conclude that there was no error in the court's challenged evidentiary rulings or jury instruction, and that sufficient evidence supported the carjacking convictions, but that the convictions for discharging a firearm during and in relation to a crime of violence must be reduced to convictions for simply using a firearm during the carjacking.

I.

The charges arose from events on October 12, 2017, and the evidence is described here in a light most favorable to the jury's verdict. The trouble began while Phillip Moore and Saul Crowe were shopping at a Walmart store in Rapid City with Zach Perry, Vanessa High Pipe, and Jessica Maho. Saul Crowe and Moore argued after Saul accused Moore of falsely calling him a thief. The accusation arose because an amplifier was stolen from Moore's van during a time when Saul Crowe and Maho had borrowed the vehicle.

After leaving the store, the group entered Moore's van, and Moore began to drive. Saul Crowe spoke on the telephone with someone, then drew a handgun and pointed it at Moore's head. Saul directed Moore to drive to the Ramkota Hotel, and Moore complied.

-2-

When the van reached the Ramkota Hotel, Saul Crowe told Moore to turn off the van, and everyone but Moore hurried out of the vehicle. Saul told Jessica Maho to call for Long Pumpkin and Moses Crowe. Moore attempted to shift the van into reverse and flee, but he was stopped by Moses Crowe and Long Pumpkin. Moses Crowe ran up to the driver's side of the van and punched Moore in the face. Long Pumpkin jumped into the back seat of the van, dragged Moore out of the driver's seat, and choked him to the point of unconsciousness while Saul Crowe held a gun on Moore.

Saul Crowe then drove the van to a location on Nike Road on the outskirts of Rapid City. Long Pumpkin, Vanessa High Pipe, Zach Perry, and the victim Moore were inside the van. Moses Crowe followed in another car. Moore regained consciousness a few times during the ride, but each time Long Pumpkin choked him again until he fell unconscious.

Once at Nike Road, Moses Crowe struck Zach Perry in the head with a handgun and told him to leave. Moses Crowe and Long Pumpkin then pulled Moore from the vehicle and beat him while he was on the ground. Moore testified that he fought with Saul Crowe and Long Pumpkin. Moses Crowe yelled at Saul and Long Pumpkin that they should "kill him and leave no witnesses," but Long Pumpkin objected. Two of the perpetrators then fired shots that sailed to the right of Moore. Moore was then punched again, and he fell unconscious. When he awakened later, the others were gone, and he could not find the keys to the van. Investigators at the scene later found shell casings that matched the caliber of firearms carried by Saul and Moses Crowe.

A grand jury charged Long Pumpkin and Moses Crowe with committing a carjacking resulting in serious bodily injury, *see* 18 U.S.C. § 2119(2), and discharging a firearm during and in relation to a crime of violence (*i.e.*, carjacking), *see id.* § 924(c)(1)(A)(iii), as well as aiding and abetting both offenses. *See id.* § 2. The

indictment also charged Moses Crowe with unlawful possession of a firearm as a previously convicted felon, based on a seizure made at a later date. *See id.* § 922(g)(1). The case proceeded to trial, and a jury found Long Pumpkin and Moses Crowe guilty on all counts. Saul Crowe entered guilty pleas and was not a party to the trial. As Moses Crowe is the only Crowe who is a party to this appeal, we will refer to him hereafter as "Crowe."

II.

A.

On appeal, Long Pumpkin and Crowe first argue that the district court violated their constitutional right to be confronted with the witnesses against them by restricting their ability to ask about drug use by Vanessa High Pipe and Jessica Maho. During trial, the district court determined that High Pipe and Maho would invoke their Fifth Amendment right against self-incrimination if questioned about their drug use. The court then prohibited the defense from asking each woman about her own drug use. Long Pumpkin and Crowe argue that this ruling was constitutional error that requires a new trial on all of the offenses of conviction.

The Sixth Amendment guarantees the right of an accused "to be confronted with the witnesses against him." U.S. Const. amend. VI. This right includes the opportunity to cross-examine adverse witnesses, but there are occasions when a defendant's right to cross-examine may conflict with a witness's constitutional right against self-incrimination. When such a conflict occurs, this court has said that the district court must strike an appropriate balance between the two rights. *United States v. Jackson*, 915 F.2d 359, 360 (8th Cir. 1990).

In fashioning a permissible accommodation, "[a] critical inquiry is whether the witness' invocation of the testimonial privilege materially prejudices the defendant."

-4-

*Ellis v. Black*, 732 F.2d 650, 656 (8th Cir. 1984). "When the defendant is unable to test the truth and accuracy of the witness' direct testimony, his sixth amendment right to cross-examination is violated." *United States v. Rubin*, 836 F.2d 1096, 1100 (8th Cir. 1988). But when the defendant is precluded "from inquiring merely as to collateral matters such as credibility, as opposed to substantive matters about which the witness testified on direct examination, the defendant's sixth amendment right is not violated." *Ellis*, 732 F.2d at 656. "[I]f the defendant has available effective alternative means of exploring relevant matters on cross-examination, sixth amendment rights remain intact." *United States v. Singer*, 785 F.2d 228, 242 (8th Cir. 1986). "Prejudice has generally been found only in those instances in which the defendant is precluded from inquiring into substantive matters about which the witness testified on direct examination." *Rubin*, 836 F.2d at 1100.

Long Pumpkin and Crowe contend that if High Pipe and Maho had admitted on cross-examination that they habitually used drugs, including on the night of the carjacking, then the defense could have raised doubt concerning the ability of the women to perceive and recall the events about which they testified. The district court ruled that the proposed questioning concerned only a collateral matter of credibility, and that the restrictions did not violate the defendants' confrontation rights. The court also observed that the defense had other means to inform the jury that High Pipe and Maho abused drugs, including on the night of the carjacking, so it was unnecessary to elicit that information directly from the witnesses. The court further explained that the defense had other methods to impeach the witnesses based on prior convictions for felonies or crimes of dishonesty, inconsistent statements, reputations for untruthfulness, and potential bias.

We conclude that the district court's ruling did not violate the rights of Long Pumpkin and Crowe under the Sixth Amendment. The witnesses were required to answer all questions about the actions of Long Pumpkin and Crowe that the witnesses described on direct examination. The only limitation concerned drug use by the

witnesses. We have characterized a witness's drug use as a matter pertaining to the credibility of the witness, *see United States v. Hodge*, 594 F.3d 614, 618 (8th Cir. 2010), and others likewise have said that the issue of a witness's drug use "has considerable relevance to credibility." *United States v. Banks*, 520 F.2d 627, 631 (7th Cir. 1975). But our decisions on the Sixth Amendment establish that where a witness's right against self-incrimination requires limits on questions about collateral matters such as credibility, the restrictions do not violate a defendant's right to confrontation. *Singer*, 785 F.2d at 242; *Ellis*, 732 F.2d at 656.

The dissent posits a distinction between "credibility" and "reliability." The stability of such a distinction in this context is questionable. The dissent's own quotation about a witness's "reliability" concerned a witness's "credibility." *See Davis v. Alaska*, 415 U.S. 308, 318 (1974) ("[D]efense counsel should have been permitted to expose to the jury the facts [about a witness's bias] from which jurors, as the sole triers of fact and *credibility*, could appropriately draw inferences relating to the *reliability* of the witness.") (emphases added), *quoted in Singer*, 785 F.2d at 242; *see also Hodge*, 594 F.3d at 648 ("Hodge also assails the *credibility* of the government's witnesses, arguing that . . . they were *unreliable* because of their prior addiction to methamphetamine.") (emphases added); *Banks*, 520 F.2d at 630 ("[E]vidence of drug use at the time of trial is clearly relevant to the matter of a witness' *credibility* as a possible indication of drug-related impairment in his *ability accurately to recollect and relate* factual occurrences while testifying.") (emphases added). For purposes of confrontation, the key point under our precedent is that the district court did not limit questioning on "substantive matters about which the witness testified on direct examination." *Ellis*, 732 F.2d at 656.

This case does not press the limits of that rule as applied to a witness who has used drugs. The district court's restriction on cross-examination did not foreclose the defense from establishing that High Pipe and Malo were under the influence of drugs when they witnessed the events about which they testified. The court asked whether

the defendants would agree to a stipulation that both women ingested controlled substances at the time of the events on trial, but the defendants declined to accept it. Later, the court ruled that the defense could ask each witness whether she had observed the other woman use drugs and, if so, on what occasions. This line of questioning would have allowed the defense to establish that both women were methamphetamine users, yet the defendants declined to take advantage of the opportunity. The defendants had sufficient chance to lay the foundation for an argument that the witnesses were impaired by drug use, but failed to do so. They were not prejudiced by a limitation on their ability to elicit materially equivalent information from each witness directly.

The dissent suggests that the defense was not able to question the two women about how drug use affected their ability to recall events. But the defense did not proffer questions along those lines, and the district court did not preclude the defense from asking the witnesses whether their vision was blurred or their memory of the events was faulty or unclear. When the defense questioned the victim Moore without limitation, the cross-examination regarding drugs addressed only the fact of his drug use. R. Doc. 268, at 81-82. The defense thus treated the potential effect of drug use on perception or memory as a matter for argument to the jury based on the fact of drug use alone. R. Doc. 272, at 62-63, 69-70. The defendants could have made the same argument about High Pipe and Malo if they had accepted the proffered stipulation. On this record, the district court's rulings did not violate the right of the defendants to be confronted by the witnesses against them.

B.

Crowe and Long Pumpkin next challenge the sufficiency of the evidence supporting their carjacking convictions. We must view the evidence in the light most favorable to the verdict, and uphold the jury's decision "if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Moore*, 108 F.3d 878, 881 (8th Cir. 1997).

To establish a carjacking offense under 18 U.S.C. § 2119, the government must prove that "(1) the defendant took or attempted to take a motor vehicle from the person or presence of another by force and violence or by intimidation; (2) the defendant acted with the intent to cause death or serious bodily harm; and (3) the motor vehicle involved has been transported, shipped, or received in interstate or foreign commerce." *United States v. Wright*, 246 F.3d 1123, 1126 (8th Cir. 2001). A "taking" is "the acquisition by the robber of possession, dominion or control of the property for some period of time." *Id.* (quoting *United States v. DeLaCorte*, 113 F.3d 154, 156 (9th Cir. 1997)). The jury convicted these defendants of carjacking with a sentencing enhancement under § 2119(2), and the government was therefore required to prove an additional element that "serious bodily injury" resulted from the carjacking.

There was testimony at trial that Crowe and Long Pumpkin attacked the victim Moore in his van at the Ramkota Hotel, and that Long Pumpkin strangled Moore to the point of unconsciousness in the back of the van before Saul drove the vehicle away from the hotel. Crowe nonetheless argues that there was insufficient evidence that he committed a carjacking. His theory is that Saul Crowe completed a carjacking of Moore's van earlier at the Walmart, and that no carjacking occurred thereafter. This argument raises "the not insubstantial problem of delineating the precise temporal limits of the crime of carjacking." *United States v. Vazquez-Rivera*, 135 F.3d 172, 178 (1st Cir. 1998).

We are not convinced that the only reasonable conclusion for the jury was that a single carjacking offense occurred before Moore and his vehicle arrived at the Ramkota Hotel. A reasonable jury could have concluded that Saul Crowe and the others did not complete the offense of carjacking until they removed Moore from the driver's seat of the vehicle, disabled him in the rear of the van, and drove away with Saul Crowe at the wheel.

To be sure, a reasonable jury could have concluded that Saul Crowe committed a carjacking before arriving at the Ramkota Hotel by brandishing a weapon and directing Moore where to drive. *See DeLaCorte*, 113 F.3d at 156. On that view, Saul acquired constructive control of the van at the Walmart and thus effected a taking. But we cannot say as a matter of law that this was the only finding available to a reasonable jury.

If Saul Crowe had been tried for carjacking based on the Walmart episode alone, capable defense counsel no doubt would have argued that there was reasonable doubt whether Saul had "taken" the van while Moore was stationed in the driver's seat with possession of the keys and immediate control of the accelerator, brakes, and steering wheel. At any moment, Moore could have acted independently of Saul: he might have honked the horn at a passing police car or crashed the van into a tree and fled. Until Saul Crowe removed Moore from a place where he could control the van, the argument goes, Saul had not acquired control himself and had not effected a taking. And suppose that Moore disobeyed any of Saul's commands. If Moore refused to make a right turn as directed, did Saul lose whatever control of the vehicle he had acquired? If Moore then complied with a successive command and turned right at the following intersection, would that constitute a second carjacking as Saul regained constructive control of the van? Unlike many reported carjacking cases in which the perpetrator seizes the keys to a car and departs the scene in the driver's seat, the Walmart scenario leaves a modicum of uncertainty about when the perpetrator has obtained "control" of the vehicle and completed a "taking."

This court's decision in *Wright* is illustrative. In that case, the perpetrator entered a vehicle at a valet stand with the parking attendant standing twenty-five yards away. The perpetrator was alone in the car with the engine running. He then pulled the car forward and hit the brakes. Next, he hit the gas again, causing the car to strike the approaching parking attendant and to throw him onto the hood. The attendant slid off the hood after the vehicle traveled twenty yards. The attendant then

struggled with the perpetrator at the driver's side door until the offender broke free and drove away in the car. 246 F.3d at 1125.

The perpetrator argued that a taking occurred before he used force against the parking attendant, and that there was thus no carjacking. A reasonable jury presumably could have found that the perpetrator acquired "possession" of the car, and therefore effected a taking, when he alone occupied the vehicle with the motor running and moved the car forward. *See State v. Thonesavanh*, 904 N.W.2d 432, 439 (Minn. 2017); *Rattray v. Brown*, 261 F. Supp. 2d 149, 155 (E.D.N.Y. 2003). But this court held that a reasonable jury was free to conclude that the taking of the car occurred later, and that it coincided with the time when the perpetrator used force against the valet by striking him with the car. *See Wright*, 246 F.3d at 1127; *United States v. Petruk*, 781 F.3d 438, 443 (8th Cir. 2015).

The Walmart episode in this case spanned a longer period of time than the incident in *Wright*, but the relevant legal principle is the same. It is possible for a carjacking scenario to present multiple points in time when a reasonable jury could find that a taking occurred. A jury's reasonable finding that the taking occurred at one of those points in time will be upheld, even if another reasonable jury could have found that the taking occurred earlier.

In this case, we conclude that a reasonable jury could have found that the taking of Moore's van occurred at the Ramkota Hotel. Until then, Moore was in the driver's seat of the car, in possession of the keys, and in physical control of the operation of the vehicle. He was even alone in the van for a time at the hotel after everyone else exited. Only then did the perpetrators remove Moore from the driver's seat and incapacitate him. There was testimony that Crowe punched Moore in the face, and that Long Pumpkin pulled him out of the driver's seat into the back of the van. Long Pumpkin choked Moore into unconsciousness, and Saul Crowe drove the van away from the hotel, with Long Pumpkin inside and Moses Crowe following in another vehicle. A reasonable jury could have found that the taking of Moore's

vehicle occurred at the Ramkota Hotel when the perpetrators disabled Moore and took full control of the van, with one of them operating the vehicle en route to their next destination.

Alternatively, even if Saul Crowe effected a taking of the vehicle at the Walmart, a reasonable jury could have concluded that a second taking occurred at the Ramkota Hotel. If we assume for the sake of analysis that Saul Crowe acquired control over the van at the Walmart by displaying a gun and giving commands to driver Moore, a reasonable jury could have found that Saul briefly lost control of the vehicle at the Ramkota Hotel. Moore testified that as soon as he parked at the hotel, everyone else jumped out of the van. Moore was then alone in the van in the driver's seat with the keys. He tried to start the car and back out of the parking spot, but Long Pumpkin entered the vehicle, grabbed Moore, and prevented him from exercising further control over the van. A reasonable jury could have found that Moore briefly retook possession of the van at the hotel, and that Moses Crowe, Long Pumpkin, and Saul Crowe then acquired possession and control of the vehicle by using force against Moore in the parking lot.

Crowe argues that this court's decision in *Petruk* precludes a finding that a second taking occurred at the Ramkota Hotel. *Petruk* explained that once the auto thief in that case took a pickup truck, he "must have lost or relinquished his 'possession, dominion or control' of the truck and regained it in order for a second 'tak[ing]' to have occurred." 781 F.3d at 442. There, the offender drove a stolen truck uninhibited for ten to fifteen minutes on a highway. A member of the victim's family pursued and eventually stopped about ten feet behind the stolen truck on the side of the road. The offender charged back to the pursuing vehicle on foot and engaged in an altercation with the driver, who remained in his vehicle. The offender then returned to the stolen truck and drove away. *Id.* at 440.

Under those circumstances, this court held that the facts did not permit a conclusion that a second taking occurred at the site of the roadside altercation,

because at no point did the thief cede possession, dominion, or control of the truck. *Id.* at 442-43. In this case, by contrast, a reasonable jury could have found that Saul Crowe at least briefly ceded possession or control of the van to Moore by leaving him alone in the van with the keys at the Ramkota Hotel. Therefore, a reasonable jury could have found that a second taking occurred at the hotel.

Crowe argues that even if a carjacking occurred at the hotel, there is insufficient evidence that he aided and abetted it. Moore testified, however, that an attacker punched him in the face while he was in the driver's seat and trying to drive away. High Pipe and Maho identified Crowe as the person who punched Moore. A reasonable jury thus could have concluded that Crowe associated himself with and participated in the taking of the vehicle by punching Moore to disable him and to assist Saul Crowe and Long Pumpkin in securing possession and control of the van.

Long Pumpkin and Crowe also contend that there was insufficient evidence that the carjacking resulted in serious bodily injury. Serious bodily injury is defined as "bodily injury which involves— (A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." 18 U.S.C. §§ 2119(2), 1365(h)(3). Moore testified that Long Pumpkin choked him in the van at the Ramkota Hotel until he became unconscious. Strangulation to the point of unconsciousness is sufficient to satisfy the statute. *United States v. Bryant*, 913 F.3d 783, 787 (8th Cir. 2019). Medical evidence was not essential. The jury reasonably could have found, based on reason and common sense, that strangulation of the degree that Moore described inflicts a bodily injury involving a substantial risk of death.

We therefore conclude that there was sufficient evidence to support the jury's verdicts that both Crowe and Long Pumpkin committed the offense of carjacking resulting in serious bodily injury.

-12-

## C.

Crowe next argues that the court erred in its instruction on aiding and abetting the use and discharge of a firearm during and in relation to a crime of violence. Jury instructions are sufficient if, taken as a whole, they fairly and adequately submit the issues to the jury. *United States v. Unpradit*, 35 F.4th 615, 624 (8th Cir. 2022). We review the district court's instructions for abuse of discretion.

Use and discharge of a firearm during and in relation to a crime of violence is an offense under 18 U.S.C. § 924(c). To aid and abet a violation of § 924(c), a defendant must know that one of his confederates is carrying a gun and have enough advance knowledge to be able to withdraw from the principal offense before it is used. *Rosemond v. United States*, 572 U.S. 65, 78 (2014). Crowe argues that the jury instructions did not require a finding that he had advance knowledge that Saul Crowe would use or discharge a firearm. Jury Instruction 25, however, required proof that Crowe "knew that the offense was being committed or going to be committed," and that he "had enough advance knowledge of the extent and character of the offense" that he was "able to walk away from the offense before all elements of the offense" were complete. R. Doc. 224, at 8. Crowe proposed another reference to advance knowledge, but the instructions as given fairly and adequately stated the law. There was no error.

## D.

Long Pumpkin and Crowe also challenge the sufficiency of the evidence supporting their convictions under 18 U.S.C. § 924(c)(1)(A)(iii) for using and discharging a firearm during and in relation to a crime of violence. Under § 924(c), a defendant who uses or carries a firearm during and in relation to a crime of violence is guilty of an offense and subject to a mandatory consecutive sentence of at least five years' imprisonment. 18 U.S.C. § 924(c)(1)(A)(i). If the firearm is discharged, then the punishment increases to a minimum of ten years' imprisonment. *Id.* § 924(c)(1)(A)(iii).

The superseding indictment in this case charged that Long Pumpkin and Crowe knowingly discharged a firearm during and in relation to a crime of violence, and aided and abetted that offense. The district court, recognizing that the discharge element operates as an enhancement of the basic § 924(c) offense of using a firearm, instructed the jury that it must find three elements: (1) that the defendants committed the offense of carjacking resulting in serious bodily injury, (2) that the defendants knowingly used, or aided and abetted another in using, a firearm during and in relation to the carjacking offense, and (3) that the defendants discharged, or aided and abetted another in discharging, a firearm during and in relation to the carjacking offense. The jury found all three elements as to both defendants, and returned verdicts of guilty.

Long Pumpkin and Crowe argue that there was insufficient evidence to support these findings. As to the basic offense of using a firearm, we conclude that the evidence adequately supported the jury's finding. Saul Crowe actively employed a firearm at the Ramkota Hotel by holding the gun on Moore while Long Pumpkin choked him. During the same sequence of events, Crowe punched Moore in the face to assist in subduing him. This evidence was sufficient to support a finding that Saul Crowe used a firearm, and that Long Pumpkin and Crowe aided and abetted that use. The evidence showed that Saul Crowe brandished a firearm starting at the Walmart and continuing through the events at the Ramkota Hotel. The circumstantial evidence supports a finding that Long Pumpkin and Crowe knew that Saul was armed, had advance knowledge that he would use the firearm during the carjacking, and acted to cause, encourage, or aid in the commission of the firearm offense by participating jointly in a forceful carjacking. We therefore conclude that a conviction for the basic § 924(c) offense of using a firearm is supported by the evidence.

As to the offense of discharging a firearm during and in relation to the carjacking, however, we conclude that the evidence falls short. The problem here is that the carjacking offense necessarily ended before firearms were discharged. The evidence showed that the perpetrators took control of the van at the Ramkota Hotel and drove it to Nike Road, at which point everyone got out of the vehicle. Saul

Crowe, Moses Crowe, and Long Pumpkin assaulted Moore while he was on the ground. Thereafter, two of the men fired gunshots.

The government argues that the firearms were discharged during the carjacking because that offense continued "while the carjacker maintain[ed] control over the victim and [the victim's] car," *Ramirez-Burgos v. United States*, 313 F.3d 23, 30 n.9 (1st Cir. 2002), or until the victim was "permanently separated from [his] car." *United States v. Cline*, 362 F.3d 343, 353 (6th Cir. 2004) (quoting *United States v. Hicks*, 103 F.3d 837, 844 n.5 (9th Cir. 1996)). The government also asserts rather implausibly that because Moore was just outside the van while the perpetrators pummeled him and discharged their guns, a reasonable jury could have found that the Crowes and Long Pumpkin had not yet "secured dominion" over the van. To the contrary, the government's position that Long Pumpkin's strangulation of Moore in the van satisfied the "serious bodily injury" element under 18 U.S.C. § 2119(2) necessarily implies that a carjacking occurred at the Ramkota Hotel and before the parties exited the van at Nike Road.

We do not think the government's view that this carjacking continued from the Ramkota Hotel through the firing of shots at Nike Road can be squared with our decision in *Petruk*. There, this court rejected the government's contention that the taking of a pickup truck continued until the offender brought the truck to a safe haven. Citing the lead opinion in *United States v. Figueroa-Cartagena*, 612 F.3d 69, 78 (1st Cir. 2010) (opinion of Lipez, J.), this court concluded that a carjacking occurs at the "precise moment" when a vehicle is seized, and is "complete once the defendant [has] secured initial control over the property in question." 781 F.3d at 443.

Saul Crowe seized control of the van at the Ramkota Hotel, with the aid and assistance of Moses Crowe and Long Pumpkin. Saul Crowe drove the vehicle to Nike Road while the victim Moore was held unconscious in the rear of the van. Moore did not arguably regain control of the van between the Ramkota Hotel and the time when shots were fired at Nike Road. Given the holding in *Petruk* that carjacking

-15-

is not an offense that continues after a taking is completed, we see no reasonable basis for a jury to conclude that the firearms were discharged at Nike Road "during" a carjacking. Therefore, we conclude that the convictions of Long Pumpkin and Crowe for a greater offense of "discharging" a firearm under § 924(c)(1)(A)(iii) must be vacated and reduced to convictions for "using" a firearm under § 924(c)(1)(A)(i).

\*　　　\*　　　\*

For these reasons, we affirm the convictions of Long Pumpkin and Crowe for carjacking resulting in serious bodily injury, and affirm Crowe's conviction for unlawful possession of a firearm as a convicted felon. We vacate the convictions under § 924(c)(1)(A)(iii) and order them reduced to convictions under § 924(c)(1)(A)(i). Because the firearms convictions affected the terms of imprisonment imposed, we vacate the sentences on all counts and remand for resentencing. *See Greenlaw v. United States*, 554 U.S. 237, 253-54 (2008).

KELLY, Circuit Judge, dissenting.

Ranson Long Pumpkin and Moses Crowe were convicted of committing a carjacking resulting in serious bodily injury, see 18 U.S.C. § 2119(2), and discharging a firearm during and in relation to a crime of violence, see id. § 924(c)(1)(A)(iii), based in significant part on the testimony of two eyewitnesses, Jessica Maho and Vanessa High Pipe. At trial, the defendants intended to cross-examine Maho and High Pipe about their use of drugs on the night of the alleged carjacking—just as they did with Phillip Moore, the victim and only other eyewitness—in an effort to raise doubts about Maho's and High Pipe's ability to accurately perceive the relevant events. The defendants also planned to ask the two witnesses about their continued drug use since the carjacking—including their use of methamphetamine in the days leading up to trial—which could have called into question their ability to reliably recall the events that took place two years earlier.

-16-

The district court barred defense counsel from "inquiring in any way" into Maho's and High Pipe's use of drugs before, during, or after "the events on trial." As a result, Long Pumpkin and Crowe were limited in their ability "to test the truth and accuracy" of these witnesses' direct testimony, United States v. Rubin, 836 F.2d 1096, 1100 (8th Cir. 1988)—testimony that was critical to the defendants' ultimate convictions. Our cases establish that this type of limitation on cross-examination violates a criminal defendant's right to confrontation under the Sixth Amendment. See id. Because I believe such a violation occurred here, I would reverse Long Pumpkin's and Crowe's carjacking and § 924(c) convictions and remand their cases for retrial.[1]

The right to confrontation protected by the Sixth Amendment includes "the right to conduct cross-examination." United States v. Arias, 936 F.3d 793, 799 (8th Cir. 2019). It is well settled, however, that this right "is not without limitation." United States v. Clay, 883 F.3d 1056, 1061 (8th Cir. 2018); see United States v. Betts, 911 F.3d 523, 527 (8th Cir. 2018) ("While the Confrontation Clause guarantees an *opportunity* for effective cross-examination, it does not guarantee cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (cleaned up)). Indeed, as is relevant here, this court has recognized on multiple occasions that when a trial witness invokes her Fifth Amendment privilege against self-incrimination, "a balance must be struck" between that right and the defendant's

---

[1]Crowe was also convicted of unlawful possession of a firearm as a convicted felon. See 18 U.S.C. § 922(g)(1). He appeals that conviction "only in the event" we remand his case for a new trial "based on . . . confrontation clause violations." Because I believe Crowe's right to confrontation was violated in this case, I would reverse his carjacking and § 924(c) convictions on that ground. Crowe argues that his § 922(g)(1) conviction "was secured, in part, on the testimony of Vanessa High Pipe" and that "the jury was entitled to evaluate what effect, if any," High Pipe's drug use might have had on her ability "to perceive and recollect" the events surrounding Crowe's unlawful possession of a firearm on October 24, 2017. A review of the trial record shows, however, that High Pipe's testimony about these events was not essential to securing the § 922(g)(1) conviction. See United States v. Singer, 785 F.2d 228, 242 (8th Cir. 1986) ("Violations of the confrontation clause may, in the appropriate case, be declared harmless.").

competing Sixth Amendment right to confrontation. United States v. Singer, 785 F.2d 228, 242 (8th Cir. 1986); see United States v. Jackson, 915 F.2d 359, 360 (8th Cir. 1990); Rubin, 836 F.2d at 1100; Ellis v. Black, 732 F.2d 650, 656 (8th Cir. 1984). Accordingly, the right to confrontation is not necessarily violated whenever a defendant is prohibited from cross-examining a witness about matters that might subject the witness to legal jeopardy. See Ellis, 732 F.2d at 656. But a defendant must still be permitted "to effectively challenge the truthfulness of the [witness's] direct testimony" and "expose . . . the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the [witness's] reliability." Singer, 785 F.2d at 242 (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)).

In describing the balance that occasionally must be struck between a witness's Fifth Amendment privilege and a criminal defendant's Sixth Amendment right to confrontation, we have observed that the latter is not violated if a witness's invocation of the former "precludes the defendant from inquiring merely as to collateral matters such as credibility, as opposed to substantive matters about which the witness testified on direct examination." Ellis, 732 F.2d at 656; see Singer, 785 F.2d at 242 ("[I]f the witness' invocation of the privilege prevents the defendant's inquiry into merely collateral matters, such as credibility, the defendant has suffered no prejudice . . . ."). The court concludes this balance was properly struck here in part because the inquiries about drug use that the defendants were precluded from pursuing on cross-examination only pertained to Maho's and High Pipe's credibility, which is a collateral matter. Respectfully, I disagree.

The court is right that, under our precedent, a defendant's right to confrontation is not necessarily violated when a witness's invocation of her privilege against self-incrimination precludes cross-examination on "matters collateral to the direct examination." Rubin, 836 F.2d at 1100. And one such "collateral" matter, we have said, is the witness's "credibility." Singer, 785 F.2d at 242. "Credibility" typically refers to whether a witness is someone who should be trusted or believed, and a witness's credibility can be attacked in multiple ways. For instance, it can be attacked with evidence or testimony suggesting that the witness is not the sort of

-18-

person who can be considered trustworthy. See, e.g., Davis, 415 U.S. at 316 (describing the "introduction of evidence of a prior crime" as a "general attack" on a witness's "credibility" because by introducing such evidence, "the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony"); see also Fed. R. Evid. 608(a) ("A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character."). It can also be attacked with evidence of "possible biases, prejudices, or ulterior motives of the witness," Davis, 415 U.S. at 316, all of which might induce the witness to lie, fabricate details, or at least be less than forthright when testifying at trial. See, e.g., Singer, 785 F.2d at 242 ("[I]nquiry into the circumstances and terms of [a witness's] plea agreement goes to [the witness's] credibility . . . ."); see also United States v. Sigillito, 759 F.3d 913, 938 (8th Cir. 2014) ("[E]xposure of the witness's motivation for testifying is an important aspect in the constitutionally protected right of cross-examination."). The ultimate goal of these modes of attack is to convince jurors that a witness lacks the capacity or motivation to be truthful. And such witness-centric matters are indeed often "collateral" to the "substantive matters" at issue in a criminal trial. Ellis, 732 F.2d at 656; see United States v. Gould, 536 F.2d 216, 221–22 (8th Cir. 1976) (concluding that inquiries into a trial witness's prior criminal activity "related only to his credibility" and were thus "of peripheral significance to the substantive aspects of the case").

But the question of whether a witness should be disbelieved because she is generally untrustworthy or has a reason to be untruthful—that is, whether the witness is credible—is different from the question of whether a witness should be disbelieved because her perception or memory of the events on trial is unreliable. See Davis, 415 U.S. at 316 (distinguishing between a cross-examiner's efforts to "delve into the witness' story to test the witness' perceptions and memory" and efforts to "impeach, i.e., discredit, the witness"); Singer, 785 F.2d at 242 (distinguishing between an inquiry into "the circumstances and terms" of a government witness's plea agreement, which went to the witness's "credibility," and an inquiry into whether a witness's direct testimony was "influenced by his review" of certain documents, which instead

went to "the reliability of [the witness's] direct testimony"). Put another way, there is a difference between a defendant attempting to show jurors that a witness is being mendacious or misleading ("The witness saw someone else commit the crime but is instead saying the defendant did it.") and a defendant attempting to show jurors that a witness is simply mistaken ("The witness thinks she saw the defendant commit the crime, but she wasn't wearing her glasses at the time."). And we have recognized this crucial distinction when a criminal defendant's right to confrontation is at issue.

Our cases confirm that if a witness invokes her privilege against self-incrimination, the court may limit a defendant's ability to fully probe on cross-examination the collateral issues of the witness's motives for testifying or her character for truthfulness (or lack thereof). See, e.g., Singer, 785 F.2d at 242. Those cases do not say, however, that a defendant can also be precluded from fully probing the accuracy and reliability of the witness's perception and memory. To the contrary, we have unequivocally said that a criminal defendant's right to confrontation is violated when he is "unable to test the truth and accuracy of the witness' direct testimony."[2] Rubin, 836 F.2d at 1100; see Singer, 785 F.2d at 242.

By cross-examining Maho and High Pipe about their drug use on the night of the October 2017 carjacking, and about the effect those drugs had on their senses and

_____

[2]The distinction between a witness's general credibility and the reliability of her testimony may not always be clear-cut. Both describe a witness's ability to provide testimony that a jury can trust and accept as true. But when balancing a witness's privilege against self-incrimination against a criminal defendant's right to confrontation, the distinction between the two does not depend on labels (e.g., "credibility" versus "reliability") but rather on a defendant's purpose in pursuing a certain line of questioning on cross-examination. Questions that focus the jury's attention on a witness's general character or her motives for testifying are often collateral to the substance of that witness's direct testimony and thus can ordinarily be barred without violating the Sixth Amendment. But questions that focus on a witness's capacity to perceive events and to reliably recall those events at a later date directly implicate the "truth and accuracy of the witness' direct testimony." Rubin, 836 F.2d at 1100. I am confident that courts can recognize this purpose-based distinction in most cases. And while some cases might present a close call, this case is not one of them.

faculties—for example, whether the drugs affected their vision, diminished their cognitive functioning, or otherwise altered their perception of events—the defendants would have put into play "the truth and accuracy" of the witnesses' testimony about who did what and when. Moreover, by asking Maho and High Pipe about any drug use in the time between October 2017 and the November 2019 trial, including in the days immediately before the two testified, the defendants might have raised additional questions about the witnesses' "ability to process and recall matters." See United States v. Hodge, 594 F.3d 614, 618 (8th Cir. 2010) ("Prior drug abuse may be relevant when the witness's memory or mental abilities are legitimately before the court."). Long Pumpkin and Crowe, in short, sought to "assail the truthfulness" of these witnesses' direct testimony by examining the accuracy and reliability of their perception and memory. Singer, 785 F.2d at 242; see Rubin, 836 F.2d at 1099 ("Cross-examination is the principal means by which the credibility of a witness and *the truth of testimony* are tested, and therefore must be accorded great respect." (emphasis added)). The topic of drug use was therefore not collateral to the substance of Maho's and High Pipe's testimony. See Rubin, 836 F.2d at 1100.

The court concludes that Long Pumpkin and Crowe had other ways to explore the witnesses' drug use that, had they been pursued, would have satisfied the Sixth Amendment. See Singer, 785 F.2d at 242 ("[I]f the defendant has available effective alternative means of exploring relevant matters on cross-examination, sixth amendment rights remain intact."); Ellis, 732 F.2d at 656; see also United States v. Walker, 917 F.3d 1004, 1010 (8th Cir. 2019) ("A critical factor in determining whether a defendant's right of confrontation has been violated is whether the defendant had other ways to obtain the effect that the excluded examination would have allegedly established."). As the court notes, one alternative means available in this case was a proposed stipulation that both Maho and High Pipe "ingested controlled substances at the time of the events on trial." But it wasn't simply the fact that Maho and High Pipe used drugs on October 12, 2017, that mattered. Rather, what mattered was how those drugs affected Maho's and High Pipe's ability to perceive the events that took place that night and how their later drug use affected their ability to recall those events at trial two years later. And the proposed stipulation said nothing about such details.

-21-

The court also notes that the defendants declined to take advantage of the opportunity to ask Maho and High Pipe whether they had observed each other use drugs. But neither witness would have been able to testify about how such drug use impacted the *other's* perception and memory. See Fed. R. Evid. 602. In the end, none of the options highlighted by the court would have provided the defendants with an effective alternative means of examining the reliability of the testimony of two key eyewitnesses in a fact-intensive trial.[3] See United States v. Dempewolf, 817 F.2d 1318, 1321 (8th Cir. 1987) ("A defendant shows a violation of his confrontation clause rights if he proves that he was prevented from exposing facts to the jury from which they could reasonably make inferences about the reliability of the witness.").

Finally, the violation of the defendants' right to confrontation was not harmless beyond a reasonable doubt. See Singer, 785 F.2d at 242 ("Violations of the confrontation clause may, in the appropriate case, be declared harmless."); see also Fed. R. Crim. P. 52(a). Long Pumpkin's and Crowe's carjacking and § 924(c) convictions were based largely on testimony from Maho, High Pipe, and Moore, the carjacking victim. Maho's and High Pipe's testimony not only established critical facets of the government's case. Their testimony also corroborated Moore's account of events, the reliability of which was challenged by Moore's admission at trial that he (too) was under the influence of methamphetamine on the night of the October 2017 carjacking.

For purposes of cross-examination, there is a meaningful difference between a witness's credibility and the reliability of the witness's substantive testimony. Long Pumpkin and Crowe were precluded from cross-examining Maho and High Pipe on matters directly relevant to their ability to perceive and remember the events on the

---

[3]I am not suggesting that Maho and High Pipe should have been compelled to testify about matters that might have subjected them to legal jeopardy, or that the district court erred by being solicitous of the witnesses' privilege against self-incrimination. But if it was not possible to adequately protect that constitutional right without also violating Long Pumpkin's and Crowe's right to confrontation, then the solution was not to favor one right over the other but rather to bar the government from calling Maho and High Pipe as witnesses at all. See Davis, 415 U.S. at 320.

night of October 12, 2017, which prevented the defendants from "test[ing] the truth and accuracy" of the direct testimony that was used to secure criminal convictions against them.  Rubin, 836 F.2d at 1100.  This amounted to a violation of their Sixth Amendment right to confrontation.[4]

I respectfully dissent.

_____

---

[4]Because I would reverse Long Pumpkin's and Crowe's carjacking and § 924(c) convictions and remand their cases for retrial on Sixth Amendment grounds, I would not reach the other issues presented in their respective appeals.