# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2320
_____

United States of America

*Plaintiff - Appellee*

v.

Drew Hamilton Clark

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 10, 2024
Filed: September 10, 2024
_____

Before LOKEN, MELLOY, and KOBES, Circuit Judges.
_____

LOKEN, Circuit Judge.

Within a few hours on May 26, 2021, using a stolen handgun, Drew Clark committed three car thefts, entered two homes and a manufacturing campus where he stole personal items and terrorized a homeowner, and struggled with police officers who attempted to arrest him. A jury convicted Clark of possessing a stolen firearm in violation of 18 U.S.C. § 922(j), three counts of carjacking in violation of 18 U.S.C. § 2119, and three associated counts of brandishing a firearm during the carjackings

in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The district court[1] sentenced him to 339 months imprisonment. Clark appeals his conviction on two carjacking and associated brandishing charges. Concluding the evidence was sufficient for a reasonable jury to find he committed these offenses, we affirm.

## I. Background

We summarize the relevant trial evidence "in the light most favorable to the verdict." United States v. Long Pumpkin, 56 F.4th 604, 610 (8th Cir. 2022).

The first car theft on the day in question occurred at the Buzzi Unichem terminal in St. Louis, where tanker trucks are loaded to haul cement. A fence surrounds the facility on all sides; there is only one entry and exit point. About 11:30 a.m., employee Daniel Becker noticed an unfamiliar vehicle parked on the worksite. Becker and others then saw someone in a contractor's pickup try to leave the site by driving through a ditch and into a neighboring business facility. Becker and others pursued in two vehicles and trapped the pickup by blocking the facility exit. The thief abandoned the pickup, climbed over a fence back onto the Buzzi site, and entered an unlocked Dodge Ram that was kept with the keys inside as a "yard truck" used as needed for work purposes. The thief began driving the Dodge Ram toward the Buzzi exit. Becker drove back to that exit and blocked it with his vehicle. Reaching the exit, the thief pointed a gun at Becker who decided the "truck ain't worth saving" and moved out of the way. The thief left the Buzzi facility in the Dodge Ram. The jury found that Clark was the thief and convicted him of carjacking (Count 2) and brandishing a firearm against Becker (Count 3).

---

[1]The Honorable Stephen R. Clark, Chief Judge of the United States District Court for the Eastern District of Missouri.

Clark then drove the Dodge Ram to the Soulard neighborhood where he entered the home of Andrew Paniello and stole multiple items, and then entered the nearby home of T.G., an oncology social worker pursuing a doctorate in social work. T.G. testified that she returned home around 12:30 p.m. As she entered her living room, her golden retriever stood up and looked toward the back door. When T.G. looked in that direction, she saw an intruder (Clark) standing outside the glass door and began screaming. Clark came inside. T.G. ran to the front door to escape. Clark caught her, held a gun to her head, and asked how much money was in her wallet. T.G. said none, pointed to car keys she dropped while running, and told Clark he could take them. Clark forced T.G. into a bathroom at gunpoint, bound her hands tightly with zip ties, briefly left T.G. alone in the bathroom with his gun, then returned and retrieved the gun, leaving T.G. bound in the bathroom with the door closed. Afraid to leave the bathroom, T.G. used her cell phone to send text messages telling a friend, her husband, and neighbors what had happened. A friend called to tell her that police were outside the home. T.G. ran outside. The police cut off her zip ties; her car keys and white Jeep Cherokee were missing. For T.G.'s harrowing experience, the jury convicted Clark of carjacking (Count 4) and brandishing a firearm (Count 5).

After leaving T.G.'s home in her Jeep, Clark drove to the Purina-Nestle manufacturing campus and began stealing personal items from Purina employees. An employee noticed clothes missing, spotted Clark wearing one of his work shirts, and told a security officer. Clark ran away, pursued through the parking lot by security officers and the employee. Clark drew his gun and pointed it at the employee. He saw Purina engineer Maneesh Anand getting into his Subaru Impreza in the parking lot. Clark said, "Give me your keys or I will shoot." Anand exited his car, saw Clark pointing a gun at him, and gave Clark the keys to the Subaru when Clark again said he would shoot if Anand did not comply. Clark fled the Purina campus in Anand's Subaru. For this car theft at gunpoint, the jury convicted Clark of carjacking (Count 6) and brandishing a firearm (Count 7).

Shortly after Clark left the Purina campus, police discovered Anand's abandoned Subaru and came upon Clark nearby. Clark fled as they approached, then struggled when the officers caught up and attempted to arrest him. Transported to a hospital for evaluation, police discovered a gun concealed in Clark's pocket bearing the serial number of the gun Clark had stolen four days earlier. The jury convicted Clark of knowingly possessing a stolen firearm (Count 1).

At the close of the evidence at trial, Clark moved for judgment of acquittal on all counts. The district court reserved decision and ordered supplemental briefing on Counts 2 and 3 and orally denied the motion on the other counts. After the jury convicted Clark on all counts, the court considered supplemental briefs regarding Counts 2 and 3 and denied Clark's motion for acquittal in a written post-trial order. Clark appeals, contending the evidence is insufficient to convict him of Counts 2 and 3 (the Buzzi incident) and Counts 4 and 5 (the ordeal at T.G.'s home).

## II. Discussion

We uphold the jury's verdict "if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." Long Pumpkin, 56 F.4th at 610 (quotation omitted). "[W]e do not pass upon the credibility of witnesses or the weight to be given their testimony." United States v. Moore, 108 F.3d 878, 881 (8th Cir. 1997) (quotation omitted).

To establish that Clark committed the carjacking offenses alleged in Counts 2 and 4, the government must prove beyond a reasonable doubt that "(1) the defendant took or attempted to take a motor vehicle from the person or presence of another by force and violence or by intimidation; (2) the defendant acted with the intent to cause death or serious bodily harm; and (3) the motor vehicle involved has been transported, shipped, or received in interstate or foreign commerce." United States v. Wright, 246 F.3d 1123, 1126 (8th Cir. 2001); see 18 U.S.C. § 2119. To establish

the brandishing offenses alleged in Counts 3 and 5, the government must prove beyond a reasonable doubt that Clark "committed a 'crime of violence,'" -- the carjackings alleged in Counts 2 and 4 -- "knowingly used a firearm during and in relation to that crime, and 'brandished' the firearm." United States v. Oliver, 90 F.4th 1222, 1225 (8th Cir. 2024). Clark does not argue there was insufficient evidence he knowingly brandished a firearm "in furtherance of" the carjacking offenses. 18 U.S.C. § 924(c)(1)(A)(ii).

## A. The Buzzi Carjacking

Clark argues the evidence is insufficient to prove that he committed the carjacking alleged in Count 2 because the evidence established he did not use force and violence or intimidation to "take" the Dodge Ram company truck. Rather, surveillance footage introduced at trial conclusively shows he could take the Dodge Ram and drive it toward the Buzzi exit because its keys were left in the unlocked vehicle. Relying on our decision in United States v. Petruk, 781 F.3d 438 (8th Cir. 2015), Clark argues that by the time he pointed his gun at Becker at the exit gate, he had already "taken" the truck without the requisite show of force. He only brandished the gun at Becker to maintain possession and control by coercing Becker into unblocking Clark's escape path.

We have defined "taking" a motor vehicle in violation of 18 U.S.C. § 2119 as "the acquisition by the robber of possession, dominion or control of the property for some period of time." Wright, 246 F.3d at 1126 (quotation omitted). In this case, the jury instruction, without objection, repeated this definition verbatim.

Long Pumpkin was another case raising "the not insubstantial problem of delineating the precise temporal limits of the crime of carjacking," 56 F.4th at 610 (quotation omitted). In upholding the defendants' carjacking convictions, we defined "the relevant legal principle," 56 F.4th at 611:

It is possible for a carjacking scenario to present multiple points in time when a reasonable jury could find that a taking occurred. A jury's reasonable finding that the taking occurred at one of those points in time will be upheld, even if another reasonable jury could have found that the taking occurred earlier.

In Petruk, the defendant stole Travis Behning's pickup parked outside his family home. 781 F.3d at 440. Behning's mother called and told him the truck had been stolen. Driving toward the home ten to fifteen minutes later, Behning passed his stolen truck traveling in the opposite direction, turned around, and pursued the thief. Petruk pulled over, exited the stolen truck, then drove away before Behning could confront him. Id. When Behning continued pursuing, Petruk again pulled over, charged Behning's vehicle, assaulted Behning with a hammer, and smashed a vehicle window as Behning tried to flee. Id.

On appeal, we reversed Petruk's carjacking conviction, concluding that his initial theft from the family home was not a "taking" from "the person or presence of another," and that his subsequent roadside assault was not a second "taking" of the truck with the requisite use of force because Petruk had acquired "possession, dominion or control" of the truck and driven it for ten to fifteen minutes. Id. at 442. Petruk's assault resulted only in "retaining control of the truck rather than 'acquir[ing]' control." Id. at 443. We rejected the Government's "continued taking" argument based on the common law understanding that "a taking was complete once the defendant had secured initial control over the property in question." Id. (quotation omitted).

By contrast, in United States v. Wright, a restaurant customer gave his Nissan Pathfinder to a valet, who left it running while he aided another customer. 246 F.3d at 1125. Returning to the Pathfinder, the valet saw someone inside it and commanded the person to exit. Wright put the car in drive, pulled forward, braked, then quickly accelerated. The car struck the valet and carried him some twenty yards on the hood.

-6-

Id.  The valet slid off the hood, opened the driver's side door, and struggled with Wright for control of the car.  Wright shoved the valet out and drove out of the restaurant parking lot.  Id.  On appeal, Wright argued the evidence was insufficient to convict him of carjacking because the "taking" was accomplished when he entered the Pathfinder and any force used was "meant only to deter [the valet's] attempts to recover the car."  Id. at 1126.  We affirmed the carjacking conviction, concluding a reasonable jury could find that Wright had taken the vehicle from the valet by force when he accelerated the car and struck the valet, "who was claiming control of the car."  Id. at 1127.

We conclude, viewing the facts in the light most favorable to the jury verdict, that this case is more like Wright than Petruk and therefore a reasonable jury could find that the taking did not occur until Clark brandished the gun at the Buzzi exit to gain the control needed to remove the Dodge Ram from the enclosed Buzzi worksite.

Clark argues that, as in Petruk, he pointed his gun at Becker to maintain possession and control of the Dodge Ram he had already acquired.  A reasonable jury, applying the definition of "taking" in the district court's instruction, could have agreed with this contention and found that the "taking" occurred when Clark drove the company truck toward the Buzzi exit.  But as in Long Pumpkin, we cannot say that this was the only finding a reasonable jury could make on this issue.

In both Wright and this case, the defendant stole a car from a fenced-in business premises while employees attempted to thwart the theft.  Clark argues his case is distinguishable because the valet in Wright was an obstacle in the defendant's path before he moved the vehicle anywhere, whereas Clark drove the Buzzi company truck some distance before confronting Becker.  But Buzzi employees, including Becker, immediately attempted to stop Clark from escaping with the truck.  They blocked the facility's exit, where Clark brandished his gun to effect his escape, only one or two minutes after Clark initially entered the truck.  Based on this evidence, a

reasonable jury could find that the "taking" was not fully completed until Clark pointed his firearm at Becker to escape the enclosed facility. See United States v. Leon, 713 F. App'x 948, 951 (11th Cir. 2017) (defendant did not "secure dominion" over the car until he shot at the owner, who was attempting to reclaim the car before defendant could drive away). Petruk is distinguishable because the robber was only confronted after he had driven the stolen vehicle "uninhibited" for a substantial period of time. 781 F.3d at 442-43.

## B. The Carjacking at T.G.'s Home

Clark argues the evidence is insufficient to convict him of the carjacking charged in Count 4 and the brandishing charged in Count 5 because, while the intruder T.G. encountered "certainly intimidated her to act involuntarily . . . her account of his statements and actions fail to establish an intent to kill or cause her serious physical injury, particularly . . . his acceptance of her offer -- admittedly under duress -- to take her keys."

The statute provides that "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle . . . from the person or presence of another by force and violence or by intimidation, or attempts to do so," is guilty of carjacking. In Holloway v. United States, the Supreme Court held that "a person who points a gun at a driver, having decided to pull the trigger if the driver does not comply with a demand for the car keys, possesses the intent, at that moment, to seriously harm the driver." 526 U.S. 1, 6 (1999). In other words, the statute "requires proof of an intent to kill or harm if necessary to effect a carjacking." Id. at 3; see Wright, 246 F.3d at 1127-28.

Clark argues that T.G.'s testimony that the intruder said he was not going to hurt her while holding a gun to her head, and that he never asked T.G. for her car keys before she volunteered them, is contrary to the jury's finding that he possessed the

requisite intent to kill or seriously harm T.G. when he took her car.  We disagree.  In United States v. Casteel, two defendants broke into the elderly victim's home, held the victim at gunpoint in a chair while one ransacked her home, warned her to stay in the chair as they left because "someone would be watching," took the car keys from her purse, and left in her car.  663 F.3d 1013, 1015-16 (8th Cir. 2011).  We upheld the carjacking conviction, despite no evidence the victim was threatened with harm concerning the motor vehicle.  Based on the defendants' violent entry into the victim's home and hour-long ransacking of the home while holding the victim in a chair at gunpoint, we concluded that a reasonable jury could find "that, at the moment Casteel took [the victim's] car, he intended to kill [her] or cause her serious bodily injury if necessary."  Id. at 1021.  Here, even absent a specific demand for T.G.'s car keys, Clark's actions provided evidence from which a reasonable jury could find the necessary intent.  Clark's statement that he was not going to hurt T.G. while holding a gun to her head does not negate the requisite conditional intent.  Nor was the jury required to take him at his word.

The district court did not err in denying Clark's motion for judgment of acquittal on Counts 2, 3, 4, and 5.  The judgment of the district court is affirmed.

_____