# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1928

_____

United States of America

*Plaintiff - Appellee*

v.

Elfred William Petruk

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 12, 2014
Filed: March 23, 2015

_____

Before LOKEN, BRIGHT, and KELLY, Circuit Judges.

_____

BRIGHT, Circuit Judge.

In June 2012, Elfred Petruk stole Travis Behning's pickup truck. Separate charges were brought against Petruk in Minnesota state court (2012) and federal court (2013) related to the theft. While incarcerated on the theft charges, Petruk attempted to obtain false exculpatory statements. Petruk was convicted by jury of one count of carjacking (Count 1) in violation of 18 U.S.C. § 2119(1) and two counts of corruptly attempting to obstruct an official proceeding (Counts 2 & 3) in violation of 18 U.S.C.

§ 1512(c)(2). The district court sentenced Petruk to three concurrent terms of 168 months in prison—the bottom of the Guidelines range of 168-210 months. Petruk appeals, arguing that the evidence is insufficient to support his convictions. We AFFIRM Petruk's conviction for attempting to obstruct an official proceeding for actions he took to obtain false statements after his original federal indictment had been filed (Count 3). We reverse and VACATE Petruk's carjacking conviction (Count 1) and his remaining obstruction conviction (Count 2) based on insufficiency of the evidence, and remand for resentencing.[1]

## I.    Background

### A.    Theft of the Truck

In the early morning hours of June 18, 2012, Tammy Behning ("Tammy") and her family were at their home in Saginaw, Minnesota, when they heard someone start the 1989 GMC pickup truck (the "truck") parked outside that belonged to Tammy's younger son, Travis Behning ("Behning"). Behning left Tammy's home earlier that evening. After hearing the truck start, Tammy's older son, Dustin Behning, jumped in his vehicle and attempted without success to follow the truck as it sped off. Tammy called 9-1-1 and reported the theft. She also contacted Behning who lived in nearby Proctor, Minnesota, and informed him that his truck had been stolen.

Upon hearing the news, Behning began driving towards Tammy's home in his other vehicle. After driving for ten to fifteen minutes, Behning passed the truck traveling the opposite way on the highway. He turned his vehicle around, flashed his headlights, and began following. The driver of the truck, later discovered to be Petruk, eventually pulled over and exited from the driver side door. When Behning

---

[1]We have jurisdiction pursuant to 28 U.S.C. § 1291.

attempted to confront Petruk, Petruk ran back to the truck and drove off. Behning continued to follow.

A short time later, Petruk crossed over a small bridge and stopped the truck. Behning, still following, stopped approximately ten feet behind the truck. Petruk exited the truck and started "charging" toward Behning who remained in the driver's seat of his vehicle speaking with Tammy on the phone. When Petruk reached the window, he demanded that Behning get off the phone. Before Behning could roll up the window, Petruk swung a hammer towards Behning's head. Behning grabbed the hammer before it hit him and Petruk pulled Behning's arm down onto the window pane causing a bruise. Petruk regained control of the hammer. As Behning began to drive off, Petruk smashed the rear driver side window of Behning's vehicle with the hammer. Petruk briefly followed Behning in the truck before turning the opposite direction. Behning then attempted to follow Petruk but eventually lost sight of the truck.

Shortly thereafter, law enforcement located the truck abandoned in a nearby ditch. Behning subsequently identified Petruk from a photo line-up. A sample of Petruk's DNA matched DNA found on the steering wheel of the truck and a hammer found inside the truck.

B.     Obstruction

Approximately six months later in December 2012, Petruk was incarcerated at the Saint Louis County Jail in Duluth, Minnesota, on state charges relating to the theft of the truck. No federal charges had yet been filed. While incarcerated, Petruk made various phone calls to his friend Sara Jean Peterson ("Peterson") in an attempt to secure false alibi witnesses. Specifically, on December 18, 2012, Petruk instructed Peterson to arrange for a woman named "Dawn" to sign a statement that she was with Petruk on the night the truck was stolen. On December 26, 2012, Petruk again

-3-

discussed the need for alibi statements. Petruk stated that he would "[j]ust need 'em in court tomorrow, or on Friday." During a subsequent conversation that day, Petruk berated Peterson for not providing the false statements to his lawyer.

Petruk's original federal indictment was filed in June 2013. In late October 2013, Peterson received two letters from Petruk while he was incarcerated awaiting trial on federal charges. In the letters, Petruk asked Peterson to find a person to play "Sam," a fictional character who would admit to the theft of the truck in a recorded telephone conversation using a script that Petruk had written. Petruk then made two calls to Peterson on November 3, 2013, asking if "Sam" was ready to make the call. Peterson testified that she never obtained any false statements for Petruk related to the theft of the truck.

C.    Proceedings Below

In November 2013, a grand jury returned a superseding indictment charging Petruk with one count of carjacking (Count 1) in violation of 18 U.S.C. § 2119(1) as well as two counts of corruptly attempting to obstruct an official proceeding in violation of 18 U.S.C. § 1512(c)(2)—the first obstruction charge (Count 2) for his attempts to secure false alibi witnesses in December 2012 prior to federal charges being filed, and the second (Count 3) for his attempt to obtain a false confession after the federal prosecution was initiated. Prior to trial, Petruk moved to dismiss the carjacking charge under Fed. R. Crim. P. 12(b)(3)(B), which governs pretrial defenses, objections, and requests based on a defect in the indictment, on the ground that the indictment did not allege facts sufficient to establish a carjacking under 18 U.S.C. § 2119. The magistrate judge recommended denial of the motion and the district adopted that recommendation. A trial followed.

At the close of the Government's case, Petruk moved for a judgment of acquittal on all counts. The district court denied the motion. The jury subsequently

convicted Petruk on all counts in the superseding indictment. The district court sentenced Petruk to three concurrent terms of 168 months in prison on each count. Petruk filed a timely notice of appeal, arguing that the evidence is insufficient to support his convictions.

We now assess Petruk's sufficiency arguments in turn.

## II. Discussion

### A. Carjacking under 18 U.S.C. § 2119 (Count 1)

Petruk first argues that the evidence is insufficient to support his carjacking conviction. "We review the sufficiency of the evidence in the light most favorable to the verdict and overturn [the conviction] only if no reasonable jury could find that the elements of the offense have been proven beyond a reasonable doubt." *United States v. Booker*, 576 F.3d 506, 512 (8th Cir. 2009). "When a sufficiency argument hinges on the interpretation of a statute, we review the district court's statutory interpretation de novo." *United States v. Gentry*, 555 F.3d 659, 664 (8th Cir. 2009). "We of course assume that Congress intended to adopt the plain meaning or common understanding of the words used in a statute." *United States v. Reed*, 668 F.3d 978, 982 (8th Cir. 2012).

In assessing the sufficiency of the evidence, we first look to the language of the applicable criminal statute to determine what the Government was required to prove beyond a reasonable doubt in order to convict Petruk. It is a crime under the carjacking statute to, "with the intent to cause death or serious bodily harm take[] a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation." 18 U.S.C. § 2119. In order to obtain a conviction under this statute, we have said that "the government must prove three basic elements: (1) the defendant

-5-

took or attempted to take a motor vehicle from the person or presence of another by force and violence or by intimidation; (2) the defendant acted with the intent to cause death or serious bodily harm; and (3) the motor vehicle involved has been transported, shipped, or received in interstate or foreign commerce." *United States v. Wright*, 246 F.3d 1123, 1126 (8th Cir. 2001). The jury instructions given at trial properly reflected the requisite elements of the crime.

On appeal, Petruk argues that the evidence is insufficient with respect to the first and second elements of the crime. Petruk contends that because the truck was unoccupied when he took it, the Government did not prove beyond a reasonable doubt that the "tak[ing]" under 18 U.S.C. § 2119 was "from the person or presence of another" or accomplished "by force and violence or by intimidation." Petruk also argues that the Government failed to prove that he acted with the requisite intent to cause death or serious bodily harm at the moment he took the truck.

In contrast, the Government's theory at trial was that the carjacking occurred not when Petruk initially stole the truck, but when he assaulted Behning on the shoulder of the road. While the Government admits that Petruk's theft constituted the initial "tak[ing]" of the truck, it argues that a reasonable jury could also conclude that a second "tak[ing]" occurred when Petruk assaulted Behning. This second "tak[ing]," the Government argues, coincided with Petruk's use of force and intent to cause serious bodily harm as required by 18 U.S.C. § 2119. Fundamentally, then, the question of whether the evidence was sufficient to convict Petruk of carjacking turns on whether a second "tak[ing]" of the truck occurred during the roadside assault.

We begin with the definition of "taking," which "is a common law term of art derived from the law of robbery and larceny." *United States v. Figueroa-Cartagena*, 612 F.3d 69, 78 (1st Cir. 2010). At common law, a "taking" referred to the act of securing dominion over a particular thing. *Id.* (citing 3 Charles E. Torcia, *Wharton's Criminal Law* § 357 (15th ed. 2009) ("There is a caption when the defendant takes

possession. He takes possession when he exercises dominion and control over the property.")). Thus, for the purposes of the carjacking statute, we have said that a "taking" is "'the acquisition by the robber of possession, dominion or control of the property for some period of time.'" *Wright*, 246 F.3d at 1126 (quoting *United States v. DeLaCorte*, 113 F.3d 154, 156 (9th Cir. 1997)).

Applying this definition to the facts at hand, a jury could reasonably conclude that Petruk's initial theft of the truck constituted a "tak[ing]" under 18 U.S.C. § 2119 because he acquired "possession, dominion or control" of the truck. *See Wright*, 246 F.3d at 1126. However, the same cannot be said of the altercation between Petruk and Behning on the shoulder of the road. Because Petruk succeeded in initially "tak[ing]" the truck, Petruk must have lost or relinquished his "possession, dominion or control" of the truck and regained it in order for a second "tak[ing]" to have occurred. But the facts do not permit such a conclusion. After Petruk acquired possession of the truck, he drove it uninhibited for approximately ten to fifteen minutes. As Behning began following, Petruk maintained his possession and control over the truck. During the roadside altercation, Petruk remained in possession of the truck, and at no point during the altercation with Behning did Petruk cede "possession, dominion or control." Thus, a second "tak[ing]" did not occur when Petruk assaulted Behning with the hammer and returned to the truck because Petruk's actions resulted in retaining control of the truck rather than "acqui[ring]" control. *See Wright*, 246 F.3d at 1126 (defining a "taking" as "the *acquisition* . . . of possession, dominion or control of the property" (emphasis added)). Accordingly, no reasonable jury could conclude that a second "tak[ing]" of the truck occurred after Petruk initially took the unoccupied truck.

We reject the Government's alternative contention that Petruk's initial taking continued until the truck was brought to a safe haven. In *Holloway v. United States*, the Supreme Court noted that the carjacking statute's "*mens rea* component . . . modifies the act of 'tak[ing]'" and thus "directs the factfinder's attention to the

-7-

defendant's state of mind at the precise moment he demanded or took control over the car 'by force and violence or by intimidation.'" 526 U.S. 1, 8 (1999) (alteration in original); *see Jones v. St. Paul Cos., Inc.*, 495 F.3d 888, 893 (8th Cir. 2007) (noting that "federal courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings" (citation omitted) (internal quotation marks omitted)). By referencing the "precise moment" that the vehicle was seized, the Court appears to endorse a narrow understanding of a "tak[ing]," which is consistent with the common law understanding that "a taking was complete once the defendant had secured initial control over the property in question." *Figueroa-Cartagena*, 612 F.3d at 78; *see also* 3 Torcia, *supra*, § 357 (explaining that at common law, the element of "taking" was distinct from "carrying away," which could not occur until after the "taking" had been completed).

Undeterred, the Government insists that our decision in *Wright*, 246 F.3d at 1126-28, demonstrates that a carjacking can occur within the meaning of 18 U.S.C. § 2119 when the perpetrator fends off the victim's attempts to regain control of the vehicle after the vehicle was initially taken. We disagree. In concluding that the evidence was sufficient to support the carjacking conviction, the court noted in *Wright* that the jury was free to conclude that the "tak[ing]" of the vehicle *coincided* in time with the defendant's use of force (striking the valet with the vehicle) in the presence of a person (the valet) as a means of securing dominion over the vehicle. *Id.* at 1127-28. Thus, *Wright* does not stand for the proposition articulated by the Government. After all, if a perpetrator's "tak[ing]" could precede his use of force, violence, or intimidation, then the "tak[ing]" would not be *accomplished* by those means, which is required under the plain language of the carjacking statute. *See* 18 U.S.C. § 2119 (requiring that the perpetrator "take[] a motor vehicle . . . *by* force and violence or by intimidation" (emphasis added)).

In sum, the evidence is insufficient to support the Government's theory at trial that the carjacking occurred at the time Petruk assaulted Behning because Petruk did

not "take[]" the truck at that time. Additionally, the jury could not have concluded that the carjacking occurred when Petruk initially took the truck from Tammy's property because, as the Government concedes, that "tak[ing]" was not from a "person" or in the "presence of another" and was not accomplished by means of "force and violence or by intimidation." *See* 18 U.S.C. § 2119. Accordingly, we reverse and vacate Petruk's carjacking conviction (Count 1) under 18 U.S.C. § 2119.

B.   Attempting to Obstruct an Official Proceeding under 18 U.S.C. § 1512(c)(2) (Counts 2 & 3)

Petruk next argues that the evidence is insufficient to convict him of either count of attempting to obstruct an official proceeding in violation of 18 U.S.C. § 1512(c)(2), which makes it a crime to corruptly "obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so." An "official proceeding" includes a proceeding before a federal judge, court, or grand jury, but not a state proceeding. *See* 18 U.S.C. § 1515(a)(1)(A). In addition, although the proceeding obstructed must be an "official proceeding" as defined by § 1515(a)(1)(A), the government need not prove that the defendant was aware that the proceeding was federal in nature. *See* 18 U.S.C. § 1512(g)(1). The official proceeding "need not be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1).

i. *Actions During Pendency of Minnesota State Charges (Count 2)*

The jury convicted Petruk of Count 2 of the superseding indictment, which charged him with attempting to obstruct an official proceeding by seeking to obtain statements from false alibi witnesses while incarcerated on state charges relating to the theft of the truck. With respect to this conviction, Petruk argues that the evidence was insufficient to prove his intent to impair an "official proceeding." Petruk relies primarily on the Supreme Court's decisions in *United States v. Aguilar*, 515 U.S. 593 (1995), and *Arthur Andersen, LLP v. United States*, 544 U.S. 696 (2005), in arguing

that the Government was required to prove that he contemplated a particular, foreseeable federal proceeding at the time he engaged in his obstructive conduct in order to convict him under 18 U.S.C. § 1512(c)(2). We have never decided whether the nexus requirement articulated in *Aguilar* and *Arthur Andersen* applies to § 1512(c)(2).

At issue in *Aguilar* was the catchall provision of a jury tampering statute, which makes it a crime to "'corruptly or by threats or force, or by any threatening letter or communication, influence[], obstruct[], or impede[], or endeavor[] to influence, obstruct, or impede, the due administration of justice.'" 515 U.S. at 598 (quoting 18 U.S.C. § 1503). The Court construed the provision as requiring the charged conduct to "have a relationship in time, causation, or logic with the judicial proceedings." *Id.* at 599. To satisfy this requirement, the defendant's conduct must have the "'natural and probable effect' of interfering with the due administration of justice." *Id.* (quoting *United States v. Wood*, 6 F.3d 692, 695 (10th Cir. 1993)). This nexus requirement, the Court stated, ensures a certain degree of "metes and bounds on the very broad language of the catchall provision." *Id.*

In *Arthur Andersen*, 544 U.S. at 707-08, the Court extended the nexus requirement to certain provisions of 18 U.S.C. § 1512 which make it a crime to "knowingly use[] intimidation, threaten[], or corruptly persuade[] another person . . . with intent to . . . cause" that person to "withhold" documents from, or "alter" documents for use in, an "official proceeding." 18 U.S.C. §§ 1512(b)(2)(A) and (B). The Court reasoned that it is "one thing to say that a proceeding 'need not be pending or about to be instituted at the time of the offense,' and quite another to say a proceeding need not even be foreseen." *Arthur Andersen*, 544 U.S. at 707-08. The Court concluded that a defendant cannot be convicted under §§ 1512(b)(2)(A) and (B) unless he or she "contemplate[es]" a "particular official proceeding" in which the documents at issue might be material. *Id.* at 708.

Relying on *Aguilar* and *Arthur Andersen*, many of our sister circuits have applied the nexus requirement to 18 U.S.C. § 1512(c)(2). *See, e.g.*, *United States v. Tyler*, 732 F.3d 241, 249-50 (3d Cir. 2013) (applying the nexus requirement to "any prosecution brought under a § 1512 provision charging obstruction of justice involving an 'official proceeding'"); *United States v. Bennett*, 664 F.3d 997, 1013 (5th Cir. 2011) (applying nexus requirement to § 1512(c)(2)), *vacated on other grounds by* __ U.S. __, 133 S. Ct. 71 (2012); *United States v. Friske*, 640 F.3d 1288, 1292 (11th Cir. 2011) (same); *United States v. Phillips*, 583 F.3d 1261, 1263-64 (10th Cir. 2009) (same); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (assuming *arguendo* that the nexus requirement applies to § 1512(c)(2)); *United States v. Reich*, 479 F.3d 179, 186 (2d Cir. 2007) (applying nexus requirement to § 1512(c)(2)). Further, we are aware of no circuit that has considered and rejected application of the nexus requirement to § 1512(c)(2). Considering the similarity of statutory language between § 1512(c)(2) and the catchall provision at issue in *Aguilar*, the application of the nexus requirement in *Arthur Andersen* to another provision of § 1512, and other circuits' application of the nexus requirement to § 1512(c)(2), we hold that § 1512(c)(2) incorporates the nexus requirement set forth in *Aguilar* and *Arthur Andersen*. In other words, we hold that a successful prosecution under § 1512(c)(2) requires proof beyond a reasonable doubt that the defendant contemplated a particular, foreseeable proceeding, and that the contemplated proceeding constituted an "official proceeding," which is defined under § 1515(a)(1)(A) to include a proceeding before a federal judge, court, or grand jury, but not a state proceeding.[2]

---

[2]It's worth noting that the district court properly instructed the jury that the Government was required to prove beyond a reasonable doubt a sufficient nexus between an "official proceeding" and Petruk's obstructive conduct in order to convict Petruk under 18 U.S.C. § 1512(c)(2). The district court instructed the jury that "[t]he defendant must . . . contemplate some particular official proceeding in which the testimony, record, document, or other object might be material."

Turning to the facts presented at trial, we conclude that the evidence is insufficient to convict Petruk of Count 2 of the federal indictment for attempting to secure statements from false alibi witnesses while incarcerated on state charges. The transcripts of the telephone calls between Petruk and Peterson in December 2012 show that Petruk's efforts were directed at securing false statements to use in his upcoming proceedings in Minnesota state court. On December 18, 2012, Petruk asked Peterson to secure alibi statements and told her he would need copies of the statements within the week. On December 26, 2012, Petruk stated that he would "need [the statements] in court tomorrow, or on Friday." In making this statement, Petruk referred only to his pending state court proceedings. His federal prosecution was not initiated until June 2013.

The facts of this case are analogous to those in *United States v. Shavers*, 693 F.3d 363, 379-81 (3d Cir. 2012), *vacated on other grounds by Shavers v. United States*, __ U.S. __, 133 S. Ct. 2877 (2013). At issue in *Shavers* was whether the evidence was sufficient to convict the defendants of witness tampering in violation of 18 U.S.C. § 1512(b)(1). *Id.* at 377. The Third Circuit determined that the nexus requirement articulated in *Arthur Andersen* extended to a prosecution under § 1512(b)(1) such that the Government was required to prove "that the defendant contemplated a particular 'official proceeding' that was foreseeable when he or she engaged in the proscribed conduct." *Id.* at 378. The court then vacated the defendants' convictions under § 1512(b)(1) on the ground that telephone transcripts introduced at trial made clear that the defendants' "efforts were directed at preventing potential witnesses . . . from testifying at their upcoming hearing in Pennsylvania state court" and that there was "no evidence that they contemplated any other proceeding." *Id.* at 379-81.

Petruk's conduct in December 2012, like the conduct at issue in *Shavers*, was unequivocally directed at obstructing Minnesota state court proceedings and not the federal proceedings which he was eventually subjected to in 2013. Moreover, the

Government failed to produce any evidence that Petruk was under federal investigation in December 2012, much less that Petruk was aware of such investigation at that time. The proceeding in Minnesota state court was the only foreseeable proceeding Petruk contemplated in December 2012. Therefore, no rational trier of fact could conclude that in attempting to secure false statements in December 2012, Petruk contemplated a particular, foreseeable "official proceeding," as defined under 18 U.S.C. § 1515(a)(1)(A). Accordingly, we vacate Petruk's conviction (Count 2) for attempting to obstruct an official proceeding under 18 U.S.C. § 1512(c)(2).

### ii.     *Actions During Pendency of Federal Charges (Count 3)*

Petruk also challenges the sufficiency of the evidence with respect to his third and final conviction for attempting to obstruct an official proceeding in violation of 18 U.S.C. § 1512(c)(2) for his attempts to obtain false statements in the form of a confession during the pendency of his federal charges. Petruk does not argue that this conviction should be vacated for lack of a sufficient nexus between his conduct and an "official proceeding." Rather, he argues that § 1512(c) is limited to obstruction involving documents or physical evidence—conduct that he did not engage in. As noted, "[w]hen a sufficiency argument hinges on the interpretation of a statute, we review the district court's statutory interpretation de novo." *Gentry*, 555 F.3d at 664.

Section 1512(c) provides:

[w]hoever corruptly—

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

-13-

> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

> shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c). While we acknowledge that § 1512(c)(1) is limited to obstruction relating to "a record, document, or other object," § 1512(c)(2) is not so limited. Section 1512(c)(2) gives defendants fair warning in plain language that a crime will occur in a different ("otherwise") manner compared to § 1512(c)(1) if the defendant "obstructs, influences, or impedes any official proceeding" without regard to whether the action relates to documents or records. *See* Webster's New World College Dictionary 1021 (4th ed. 2007) (defining "otherwise" as "in another manner; differently"). Thus, § 1512(c)(2) "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction, which is listed in (c)(1)." *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (citation omitted) (internal quotation marks omitted); *see also Aguilar*, 515 U.S. at 598 (interpreting similar language in 18 U.S.C. § 1503(a) as a "catchall" omnibus clause that is "far more general in scope than the earlier clauses of the statute").

Consistent with this interpretation, we have affirmed a conviction under § 1512(c)(2) when a defendant attempts to obstruct a proceeding by soliciting false statements. *See United States v. Lucas*, 499 F.3d 769, 780-81 (8th Cir. 2007) (affirming defendant's conviction under § 1512(c)(2) for requesting that individuals falsely claim ownership of a firearm). Other circuits have affirmed similar convictions under § 1512(c)(2). *See United States v. Jefferson*, 751 F.3d 314, 321 (5th Cir. 2014) (defendant made intentional false statements to the court during a preliminary injunction hearing); *Carson*, 560 F.3d at 584 (defendant made false statements to a grand jury); *United States v. Mintmire*, 507 F.3d 1273, 1290 (11th Cir.

2007) (defendant "attempted to orchestrate" grand jury witness's testimony by sending notes to an attorney who in turn "coached" the witness).

We reject Petruk's reading of § 1512(c)(2) and conclude that the evidence is sufficient to support his obstruction conviction (Count 3) for actions he took to secure false statements after the initiation of the federal prosecution. Accordingly, we affirm that conviction.

## III.    Conclusion

For the foregoing reasons, we VACATE Petruk's convictions for carjacking (Count 1) and attempting to obstruct an official proceeding (Count 2) for actions he took to obtain false statements while incarcerated on state charges. We AFFIRM Petruk's remaining obstruction conviction (Count 3).

At Petruk's sentencing, the district court appears to have adopted the recommendation in the presentence investigation report that because Petruk's convictions should be grouped under U.S.S.G. § 3D1.2(c), the base offense level for both obstruction convictions is equal to the base offense level for the underlying carjacking offense. *See* U.S.S.G. § 3C1.1 cmt. n.8. Under this rationale, the district court calculated an offense level of 30 for each of Petruk's obstruction convictions. However, because grouping Petruk's obstruction convictions with his carjacking conviction under § 3D1.2 was contingent on Petruk being convicted of the underlying offense (carjacking), *see* § 3C1.1 cmt. n.8, it would appear that our vacation of Petruk's carjacking conviction may alter the applicable Guidelines range for the obstruction conviction we affirm today. Accordingly, we remand to the district court for resentencing on Petruk's remaining conviction.

_____