United States Court of Appeals

For the Eighth Circuit

_____

No. 23-1179

_____

United States of America

*Plaintiff - Appellee*

v.

Roylee Richardson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: October 20, 2023
Filed: February 7, 2024

_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

STRAS, Circuit Judge.

A jury found Roylee Richardson guilty of witness tampering, 18 U.S.C.
§ 1512(b), and possessing a firearm as a felon, *id.* § 922(g)(1). Although he argues

that the district court[1] should have acquitted him of the former and prevented the jury from hearing about so many of his prior felony convictions, we affirm.

## I.

Richardson's problems began after his then-girlfriend reported that he had "pistol-whipped" her and shot at her would-be rescuer's van. The harassment continued after his arrest. In a series of recorded jailhouse calls, he tried to get her to recant or refuse to testify, both directly and through others. After the jury heard the recordings, it found him guilty of two counts of witness tampering.

## II.

Sufficient evidence supported the verdict on both counts. Witness tampering has two elements. *See United States v. Craft*, 478 F.3d 899, 900 (8th Cir. 2007). First, the defendant must "knowingly use[] intimidation, threaten[], or corruptly persuade[] another person," such as a victim. 18 U.S.C. § 1512(b). Second, he must intend to "influence, delay, or prevent" another's testimony "in an official proceeding" or "cause or induce" the person to "withhold" it from one. *Id.* § 1512(b)(1), (2)(A); *see also United States v. Little Bird*, 76 F.4th 758, 762 (8th Cir. 2023) (setting out the elements for a conviction under § 1512(b)(1)); *United States v. Crippen*, 627 F.3d 1056, 1065 (8th Cir. 2010) (describing the elements under § 1512(b)(2)(A)). In evaluating the sufficiency of the evidence, our review is de novo, but we must view the evidence in the light most favorable to the verdict and draw all inferences in favor of the government. *See United States v. Water*, 413 F.3d 812, 816 (8th Cir. 2005).

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

Richardson's first witness-tampering conviction arose out of a flurry of calls just days after his arrest. No federal prosecution existed yet, so the question is whether it is possible to "influence, delay, or prevent" someone's testimony in a not-yet-pending "official proceeding." 18 U.S.C. § 1512(b)(1).

Not just any proceeding will do. It must be federal, such as one "before a judge or court of the United States" or "a [f]ederal grand jury." *Id.* § 1515(a)(1). State proceedings do not count. *See United States v. Petruk*, 781 F.3d 438, 444 (8th Cir. 2015).

The "official proceeding," although it has to be federal, does not have to "be pending or about to be instituted at the time of the offense." 18 U.S.C. § 1512(f)(1). As long as a "particular, *foreseeable*" federal proceeding was "contemplated," *Petruk*, 781 F.3d at 445 (emphasis added), at the time the "intimidation, threat[], or corrupt[] persua[sion]" took place, 18 U.S.C. § 1512(b), the crime is complete.

Proving this type of "nexus" to a not-yet-pending proceeding can be a challenge. *Petruk*, 781 F.3d at 445. In *Petruk*, we considered whether an attempt to influence testimony when only a state proceeding existed satisfied the "particular, foreseeable" federal-proceeding requirement. *Id.* We concluded that the answer was no because the defendant had "referred *only* to his pending state[-]court proceedings" in a conversation about a possible alibi witness. *Id.* (emphasis added).

This case is different. Although Richardson was in state custody, he was already "contemplat[ing]" a federal felon-in-possession charge. *Id.* Consider the following conversation from three days after his arrest:

> ROYLEE RICHARDSON: . . . All they got to do is drop that intimidation [charge], because I ain't shooting at nobody.
> UNKNOWN MALE: Hell, no, you don't want that. You don't want *the feds* picking that shit up, brother.

ROYLEE RICHARDSON: I take the other charge.  You feel me?  The other charges I'll take.
UNKNOWN MALE: *The felon in possession*?
ROYLEE RICHARDSON: Yeah, I'll take that.
UNKNOWN MALE: You gonna *go federal* though, man.  Do you know how much you gonna be facing after your background *with the feds*, brother?
ROYLEE RICHARDSON: Yeah.
UNKNOWN MALE: You facing like 10, 15 years if *the feds* pick everything up right now, all those cases. . . .  Just like that, brother, *you're going federal*.
ROYLEE RICHARDSON: Yeah.
UNKNOWN MALE: You're trippin.  Hell no, *you won't take no felon in possession*. . . .
ROYLEE RICHARDSON: Man.

(Emphases added.)

The call logs show that Richardson called the victim next, less than 20 minutes later.  He began by professing his love for her and then insisted that she "say nothing" because he was "fighting the case."  After asking whether the police had found the gun, he went on to explain that if she refused to appear in court or "g[o]t on the stand and sa[id] . . . that she [had] lied," he "would be cool."  What he really feared, after all, was "spend[ing] his life in prison."

He asked again about the gun a few days later.  When she said officers had found it, he told her that she had "bl[own]" it.  He also explained that it "might" mean he "go[es] *fed*."  (Emphasis added.)  A few minutes later, he instructed her to change her story.

From these conversations, the jury drew the reasonable inference that Richardson's attempts at "corruptly persuad[ing]" her to lie or refuse to testify had a nexus to the lengthy sentence he would face from a federal felon-in-possession charge.  18 U.S.C. § 1512(b).  A "particular" federal prosecution was "foreseeable," *Petruk*, 781 F.3d at 445, even if it was not yet "pending or about to be instituted,"

18 U.S.C. § 1512(f)(1). *See United States v. Mink*, 9 F.4th 590, 610 (8th Cir. 2021) (noting that the defendant had "contemplated criminal liability in a future proceeding" and "expressly acknowledged that the government was building a case against him"). And he thought that "influenc[ing]" her "testimony" or "prevent[ing]" it altogether would stave off a lengthy federal sentence. 18 U.S.C. § 1512(b)(1). The jury did not need to hear anything else to find him guilty.

B.

The tampering did not end there. After a federal grand jury indicted him on felon-in-possession and witness-tampering counts, he asked others to contact the victim. This time, the indictment made an official proceeding "before a judge or court of the United States" foreseeable, if not inevitable. *Id.* § 1515(a)(1)(A). So our focus shifts to whether these efforts involved "corrupt[] persua[sion]." *Id.* § 1512(b).

Screenshots and audio recordings of various conversations revealed Richardson's intentions. One woman, at his direction, tried to call the victim and make her feel guilty about testifying. The message she was supposed to relay was clear: her testimony would mean "he gonna be out when he like 60 years old." He had someone else follow up with a text message two days later, pleading for her to "let [it] go" so he could "come home and be with [his] family."

Both times, Richardson's goal was to convince the victim not to testify through "corrupt[] persua[sion]." 18 U.S.C. § 1512(b). Take his instruction to the caller to avoid writing anything down. It shows a "consciousness of wrongdoing," *Little Bird*, 76 F.4th at 762, a desire to keep law enforcement from learning about his actions because he knew they were "wrong[]," *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705–06 (2005). Exactly the type of "wrongful, immoral, depraved, or evil" intentions required for a witness-tampering conviction. *Id.* at 705; *see also United States v. Iu*, 917 F.3d 1026, 1032 (8th Cir. 2019) (noting in a witness-tampering case that the jury was "entitled to consider, as evidence of . . .

consciousness of guilt," statements urging the victim "to recant her story because of the negative consequences the allegations had on [the defendant]").

## III.

We would be facing a third sufficiency challenge if the government had not presented evidence of Richardson's prior felony convictions. One element of a felon-in-possession charge is, as the name would suggest, that the possessor have a prior felony conviction. *See* 18 U.S.C. § 922(g)(1); *United States v. Montgomery*, 701 F.3d 1218, 1221 (8th Cir. 2012). Another is knowledge that he was a felon. *See Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). The parties agree on that much.

The dispute here is over *how* the government proved these elements. *See United States v. Richardson*, 40 F.4th 858, 865 (8th Cir. 2022) (reviewing the admission of evidence for an abuse of discretion). What typically happens in a felon-in-possession case is that a defendant will formally admit his prior felony convictions in an *Old Chief* stipulation, which relieves the government of its burden of proving them. *See Old Chief v. United States*, 519 U.S. 172, 191 (1997). Although the arrangement may seem one-sided, the defendant gets a significant benefit: the details of prior crimes never get in front of the jury. *See id.*

In this case, Richardson refused to enter an *Old Chief* stipulation. So the government had to prove that he both had a prior felony conviction—one "punishable by imprisonment for a term exceeding one year"—and knew he was a felon. 18 U.S.C. § 922(g)(1); *see also United States v. Jones*, 266 F.3d 804, 811 (8th Cir. 2001). The usual rules of evidence applied, meaning that the government could address the what (the name and nature of the offense), the who (the identity of the person who committed it), and the when (the timing of the offense and the length of the sentence). *See Richardson*, 40 F.4th at 866. All the details relevant to the elements he contested. *See* Fed. R. Evid. 401.

The government followed this formula during Richardson's trial. After he decided against an *Old Chief* stipulation, the government introduced multiple prior felony convictions to prove he was a felon and knew it at the time. *See Richardson*, 40 F.4th at 866. Having contested those elements, he cannot now "complain that the government introduced evidence to prove" them.[2] *United States v. Aranda*, 963 F.2d 211, 215 (8th Cir. 1992); *see* Fed. R. Evid. 404(b)(2).

It makes no difference that the government introduced more convictions than necessary. *See* Fed. R. Evid. 403 (cautioning against the "needless[] present[ation] [of] cumulative evidence"). As we have explained, we allow "evidence of multiple prior felony convictions" because a defendant might successfully "contest[] one or more of [them] in front of the jury." *Richardson*, 40 F.4th at 865–66 (citation omitted) (holding that "the probative value of the evidence of his prior convictions was not substantially outweighed by the risk of unfair prejudice"); *see also United States v. Hellems*, 866 F.3d 856, 862–63 (8th Cir. 2017) (describing the multiple-conviction rule as "settled law in this circuit").

The government may have pushed the envelope, however, when it offered three mug shots. *See United States v. Bohr*, 581 F.2d 1294, 1299 (8th Cir. 1978) (making clear that we do "not endorse the introduction into evidence of obvious 'mug shots'"). Richardson's position is that the unfair prejudice from the jury seeing those photographs substantially outweighed their limited probative value. *See Richardson*, 40 F.4th at 866; *see also* Fed. R. Evid. 403. We disagree, but only because the government had to prove that Richardson himself committed those crimes and would have known about them. *See Rehaif*, 139 S. Ct. at 2199–200. There was no abuse of discretion, in other words, because the harm from showing the mug shots—that he had "a prior criminal record"—is exactly what the government had to prove. *United States v. Harbin*, 585 F.2d 904, 908 (8th Cir. 1978) (per curiam).

---

[2]For that reason, we need not consider the government's alternative arguments on knowledge, intent, absence of mistake, and lack of accident. *See* Fed. R. Evid. 404(b)(2).

## IV.

We accordingly affirm the judgment of the district court.

_____