# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1851
_____

United States of America

*Plaintiff - Appellee*

v.

Loren Goodlow

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: February 13, 2025
Filed: April 1, 2026
_____

Before SMITH, KELLY, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

A jury found Loren Goodlow guilty of sexual abuse of a minor (8 counts), 18 U.S.C. §§ 1153, 2243(a), and 2246(2); abusive sexual contact (2 counts), §§ 1153, 2244(a), and 2246(3); attempted sexual exploitation of a minor (2 counts), § 2251(a) and (e); attempted receipt of child pornography (1 count), § 2252(a)(2)(A); and tampering with a witness (1 count), § 1512(c)(2). The district court sentenced him to 480 months in prison. On appeal, Goodlow argues that the Government failed to

prove that certain sexual abuse and abusive sexual contact occurred in Indian country, that he sought images depicting "sexually explicit conduct," that he knew that the child pornography victim was a minor, and that he tampered with a witness. We vacate the witness tampering conviction, otherwise affirm his convictions, and remand for resentencing.

## I. Background

Goodlow is a member of the Lower Brule Sioux Tribe. He moved onto the Swallow Ranch in October 2022 when he was 33 years old, though he had been staying there off and on since 2019. Goodlow lived in a camper and worked as a ranch hand, breaking horses, caring for the animals, and maintaining the property. The Swallow Ranch is on the Cuny Table area of the Pine Ridge Indian Reservation, east of Buffalo Gap, South Dakota.[1]

A.S. was 15 when Goodlow moved onto the Swallow Ranch. A.S. lived with her grandparents in the main house. She saw Goodlow as an older brother who was teaching her how to train horses. After a while, Goodlow started talking to A.S. about sex. When they went riding and stopped along the trail, Goodlow would grab her around her waist, hold her hips, and touch her thighs. He soon started asking if A.S. would have sex with him, sending her photos of his penis, and asking her for nude photos. A.S. eventually replied with a photo of her from the waist up in her bra and later with one of her thigh.

The first time Goodlow sexually abused A.S. was in January 2023 at "the campground," an area north of the ranch home where the family sometimes had fires. He told her not to tell anyone. The next time was at an outbuilding. The sexual abuse became a regular occurrence, with Goodlow demanding vaginal, anal, and oral sex.

---

[1]A table is a "flat, elevated region; a plateau or mesa." *Tableland*, *The American Heritage Dictionary* (5th ed. 2018).

A.S.'s 12-year-old sister N.S. visited her at the Swallow Ranch on Friday, March 17, 2023. Goodlow sexually abused both girls the next day, first at the campground, then at a rock formation between the campground and the ranch homes, then in Goodlow's camper. After N.S. went home, A.S. told her grandmother and other family members about the abuse. When the family confronted Goodlow on March 20, he denied everything. He messaged N.S. that evening, telling her to say A.S. was lying and that nothing happened. Goodlow said that he would be "took away to jail again or took from [his] babies." FBI Special Agent Stephen Beery received a call from tribal police the next day and began investigating Goodlow.

Agent Beery discovered Snapchat messages between Goodlow and another minor, C.J.E., from December 2021, when C.J.E. was 16. According to C.J.E., the two had met at her grandfather's funeral and Goodlow had dated her sister. After connecting on Facebook and messaging on Snapchat, Goodlow asked C.J.E. for nude photos. She testified that she sent him a photo of a vagina; Goodlow responded with a photo of his penis. When Agent Beery interviewed her in May 2023, C.J.E. said that she found the photo she sent on the internet.

Goodlow was charged in a superseding indictment in July and went to trial in December. Agent Beery, A.S., N.S., C.J.E., Goodlow, and others testified. The Government entered into evidence an aerial photo of the Swallow Ranch, with an inset map of the Pine Ridge Indian Reservation; screenshots and transcripts of messages by Goodlow, A.S., N.S., and C.J.E.; and the photo C.J.E. sent to Goodlow. The jury convicted Goodlow on all counts, and the district court denied his motion for judgment of acquittal. We review *de novo* the denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the verdict and reversing "only if no reasonable jury could have found guilt beyond a reasonable doubt." *United States v. Sanchez*, 42 F.4th 970, 974 (8th Cir. 2022) (citation omitted).

## II. Sexual Abuse of a Minor and Abusive Sexual Contact

The Major Crimes Act gives the federal government jurisdiction over certain crimes committed by an Indian within Indian country, including sexual abuse of a minor and abusive sexual contact. *See* §§ 1153, 2243, 2244, 2246. Whether the crimes were committed in Indian country is a mixed question of fact and law, which the Government must prove. *United States v. Stands*, 105 F.3d 1565, 1575–76 (8th Cir. 1997); *Sanchez*, 42 F.4th at 974. The jury decides as a matter of fact where the crimes occurred, *Stands*, 105 F.3d at 1575, and the court decides as a matter of law whether those places "fall[] within Indian country," *Sanchez*, 42 F.4th at 974 (citing *United States v. Love*, 20 F.4th 407, 411 (8th Cir. 2021)). "Indian country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government." § 1151.

The district court instructed the jury that to convict Goodlow, it had to find that the offense took place in Indian country. Neither party objected. Under our case law, if the evidence "provided a reasonable basis for the jury to find the offense[s] occurred in Indian Country," any error in submitting the issue to the jury is harmless. *See Sanchez*, 42 F.4th at 974; *Stands*, 105 F.3d at 1574–76 (affirming because "the jury had a reasonable basis for finding that the crime occurred in Indian country," even though "it may have been error" to submit to the jury the question "whether the alleged site of the offense was Indian country").

Goodlow argues that the Government failed to prove that the campground or rock formation was within the exterior boundaries of the Pine Ridge Indian Reservation, and so he should have been acquitted on the five counts of sexual abuse and one count of abusive sexual contact that occurred there. Although no witness identified where the campground or rock formation were located on the map, the record still provides a reasonable basis for the jury to find that the offenses occurred in Indian country.

First, Agent Beery testified that he investigated the sexual abuse reported by A.S. and N.S. in March 2023 and that "[t]he incident took place on the Swallow Ranch, which is on the Cuny Table area of the Pine Ridge Indian Reservation." Goodlow argues that this testimony is not specific enough to place the abuse of A.S. and N.S. within Pine Ridge because his fourteen convictions involved different locations and different dates. But the context of Agent Beery's testimony suggests that the "incident" was the sexual abuse of both girls on March 18, mere days before Beery began investigating. And a reasonable jury could find that the March 18 sexual abuse—which occurred at the campground, the rock formation, and in Goodlow's trailer—all "took place on the Swallow Ranch," which is within the Pine Ridge Indian Reservation. Although Beery testified that the campground was "quite aways back in the badlands," he also explained that the ranch begins at the homes and "extends quite a bit north, which goes into more badlands type terrain." A jury could find that when Agent Beery referred to the Swallow Ranch, he referred generally to the area where the March 18 offenses occurred, including the rock formation and the campground.

Second, the Government introduced an aerial photo titled "Pine Ridge Reservation; Oglala Lakota County, South Dakota, Fee Land – Section 32 T41N R46W." Agent Beery testified that the exhibit showed "a land plat description of the property" inlaid with "a bigger image of . . . the Pine Ridge Indian Reservation." While the photo doesn't outline the boundaries of the Swallow Ranch or have a key, the inlaid map shows that the Cuny Table is located within the northwest quadrant of the reservation and does not abut either border. Bureau of Indian Affairs Land Operations Officer Lionel Weston also testified that the Swallow Ranch address and the range unit[2] on which it is located are within the exterior boundaries of the Pine Ridge Indian Reservation within Indian country.

---

[2]"Range unit" is a term of art that "means rangelands consolidated to form a unit of land for the management and administration of grazing under a permit." 25 C.F.R. § 166.4; *see* Village Earth, *Pine Ridge Reservation Allottee Land-Planning Map Book* 24, Indian Land Tenure Foundation, available at iltf.org/resources/publications (last visited Mar. 27, 2026).

Third, there was evidence that the campground was not far from the ranch homes, and it is undisputed that the rock formation was even closer. Agent Beery described the distance between the campground and the ranch homes as "a long walk," more easily accessed on horseback or side by side. N.S. said the horseback ride to the campground took about 30 minutes. A.S.'s testimony also indicated that the ride from the main house to the campground was relatively short. She and N.S. went for a ride on March 18, returned to the ranch, met up with Goodlow, and went with him for a second ride, during which they stopped at the campground and rock formation, where Goodlow abused them. Goodlow testified that they returned to the ranch no later than 1:00 p.m. and that he had worked the horses in the morning before meeting up with the girls.

While this would have been a much easier question if there was more specific testimony at trial, the record as a whole gave the jury a reasonable basis for finding that the campground and the rock formation are within Indian country. *See Stands*, 105 F.3d at 1574.

### III. Attempted Sexual Exploitation of a Minor and Attempted Receipt of Child Pornography

Goodlow next argues that the district court should have granted his motion for judgment of acquittal on the two counts of attempted sexual exploitation of minors, § 2251(a) and (e), which required proof that the defendant "attempted to entice the minor to engage in sexually explicit conduct" and took a substantial step towards committing that offense, *see United States v. Hensley*, 982 F.3d 1147, 1155 (8th Cir. 2020). "Sexually explicit conduct" includes the "lascivious exhibition of the anus, genitals, or pubic area of any person." § 2256(2)(A)(v).

The evidence was sufficient to support his conviction related to A.S. Goodlow repeatedly asked A.S. to send nude photos of herself over Snapchat, during the same time frame that he was grooming her to have sex with him. After she told him one night that she was "laying in bed," he sent a photo of his penis, saying he'd send a

"pic for pic." A.S. felt pressured to send a nude photo because "he wouldn't quit asking me," so she sent the photo of herself wearing only a bra. Goodlow replied, "Damn, you have big boobs." When he asked for "a butt pic," A.S. sent a photo of her thigh. Considering the time frame, context, and how A.S. interpreted Goodlow's requests, a reasonable jury could find that Goodlow tried to convince A.S. to lasciviously exhibit her anus, genitals, or pubic area, take photos, and send them to him. *See United States v. Gonzalez*, 826 F.3d 1122, 1126 (8th Cir. 2016) (evidence sufficient to support attempted sexual exploitation of a minor based on evidence that defendant and minor discussed sexual acts and exchanged nude photos over text).

The same goes for the conviction related to C.J.E. Goodlow sent flirtatious messages to C.J.E. and complimented her "ass." C.J.E. testified that Goodlow "wanted photos of me . . . [l]ike nudes" and asked her for them. His request made C.J.E. feel uncomfortable because she "didn't really know him and it was just some random guy asking me for photos," but she sent Goodlow a photo depicting female genitals, specifically, the vulva and anus. Taken together, this evidence is enough for a jury to convict Goodlow of attempted sexual exploitation of a minor.

Goodlow also argues that the Government failed to prove attempted receipt of child pornography because there is no evidence that he knew that C.J.E. was a minor. *See United States v. Barrios*, 151 F.4th 961, 964 (8th Cir. 2025) (receipt of child pornography requires proof that defendant knew the visual depictions were of a minor). But considering Goodlow's testimony that he knew C.J.E.'s family well, C.J.E.'s testimony that she had met Goodlow, and the photo she sent (which a jury could find depicted the genitals of a prepubescent girl), a reasonable jury could find that Goodlow knew C.J.E. was under eighteen. *See id.* (circumstantial evidence supported the jury's finding that the victim was under the age of eighteen).

## IV. Witness Tampering

Finally, Goodlow challenges his conviction for witness tampering under § 1512(c)(2), which makes it a crime to corruptly "obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so." As relevant here, an "official proceeding" is one before a federal judge. § 1515(a)(1)(A). It "need not be pending or about to be instituted at the time of the offense." § 1512(f)(1). "Nor must the Government prove that a defendant knew or should have known that the proceeding was a federal one." *United States v. Abdullahi*, 144 F.4th 1034, 1041 (8th Cir. 2025) (citing § 1512(g)(1)). But the Government must prove "that the defendant contemplated a particular, foreseeable proceeding" when he engaged in obstructive conduct. *United States v. Petruk*, 781 F.3d 438, 445 (8th Cir. 2015).

The Government points to Goodlow's statement to N.S. that he would be "took away to jail again" and his testimony that he knew he could go to jail for the girls' accusations. That evidence proves that Goodlow "contemplated criminal liability in *a* future proceeding." *Abdullahi*, 144 F.4th at 1042 (citation omitted). But our case law requires that "he . . . contemplated a *particular* proceeding," and the Government offers no evidence of that. *Id.* ("The question is not whether [the defendant] contemplated facing criminal charges at all; he must have contemplated a *particular* proceeding."). When Goodlow messaged N.S. on March 20, 2023, begging her to say that A.S. was lying and that nothing happened, he knew that A.S. had disclosed the abuse to her family. But no criminal investigation was underway, and the FBI was not even notified until the next day. The Government has not pointed to any evidence that Goodlow contemplated a particular proceeding when he asked N.S. to lie. This general concern about going to prison is evidence that he "contemplated facing criminal charges," but it is not enough to prove that he "contemplated a *particular* proceeding."[3] *See id.* at 1042; *see also United States v.*

---

[3]The Government cited no cases in response to Goodlow's argument, but there are some. The evidence was sufficient when a defendant asked a family member to destroy evidence and to sign a false affidavit to "throw a big monkey wrench" in the Government's case. *United States v. Mink*, 9 F.4th 590, 600, 610 (8th Cir. 2021).

*Richardson*, 92 F.4th 728, 731 (8th Cir. 2024) ("Proving this type of 'nexus' to a not-yet-pending proceeding can be a challenge.").

## V. Conclusion

We vacate Goodlow's witness tampering conviction but affirm his other convictions. The parties agree that the sentencing package doctrine applies, so we also "vacate the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).

KELLY, Circuit Judge, concurring.

I concur in the court's opinion but, as to Section IV, I concur only in the result, because I would reverse Goodlow's witness tampering conviction under different reasoning.

In assessing whether a defendant contemplated an "official proceeding," our cases have typically addressed whether the contemplated proceeding was a particular one before a federal judge or court, regardless of whether it was pending or whether the defendant knew the proceeding was federal in nature. For example, in Abdullahi, the evidence showed the defendant contemplated proceedings only in his pending

---

And we affirmed when a defendant in state custody told the witness to change her story after officers found a gun because a gun charge could mean "he 'go[es] *fed*.'" *United States v. Richardson*, 92 F.4th 728, 731–32 (8th Cir. 2024) (alteration in original). But we have vacated convictions when the defendant contemplated a proceeding but the Government failed to prove that the contemplated proceeding was federal. *See Abdullahi*, 144 F.4th at 1041 (defendant "had not been told and did not know that he was under federal investigation, nor did he know that additional charges might be filed, whether state or federal"); *Petruk*, 781 F.3d at 445 (defendant directed his "efforts . . . at securing false statements to use in his upcoming proceedings in Minnesota state court").

state case. <u>Abdullahi</u>, 144 F.4th at 1042–43 ("The question is not whether Abdullahi contemplated facing criminal charges at all; he must have contemplated a *particular* proceeding, and the nature of the phone call here only proves he was thinking of his pending state case. . . . Abdullahi explicitly referenced his upcoming court date in state court."); <u>see also</u> <u>Petruk</u>, 781 F.3d at 445 ("[T]ranscripts of the telephone calls . . . show that Petruk's efforts were directed at securing false statements to use in his upcoming proceedings in Minnesota state court."). In <u>Richardson</u>, by contrast, the defendant's statements showed he contemplated the witness testifying in court generally, and in a federal case specifically. <u>Richardson</u>, 92 F.4th at 731–32 (The defendant, minutes after mentioning the possibility of a federal case, "went on to explain that if the witness refused to appear in court or 'got on the stand and said that she had lied,' he 'would be cool.'" (citation modified)); <u>see also</u> <u>Mink</u>, 9 F.4th at 610 (holding Mink's actions, including instructing someone to destroy evidence "after law enforcement had searched the house and to sign a false affidavit[, ]by their very nature evince that Mink contemplated criminal liability in a future proceeding," and in any event, "Mink expressly acknowledged that the government was building a case against him"). The court relies on this line of cases to reverse.

But here, we are faced with a more preliminary question. In this case, the question is whether Goodlow contemplated any proceeding at all—particular, official, or otherwise. And the evidence is not sufficient to prove that he did. When A.S.'s family asked him about A.S.'s allegations, Goodlow denied them, and he wanted her to "say she[']s lying." The government relies on Goodlow's statement that he did not want to "go to jail" or "be too[k] away from [his] babies" as evidence sufficient to prove beyond a reasonable doubt that he was contemplating a criminal trial. But almost any time a person is accused of conduct that might be unlawful, "jail" is a possibility. To say that any acknowledgment of that possibility supports a witness tampering charge stretches the statute beyond what it can reasonably bear— particularly under the facts presented here, where there is no evidence that Goodlow intended to influence A.S.'s statements to anyone but her family. On this record, the nexus is too attenuated and the application of the statute too far-sweeping. <u>Cf.</u> <u>Arthur Andersen LLP v. United States</u>, 544 U.S. 696, 708 (2005) (analogizing to <u>Aguilar</u>,

-10-

where it was not enough that "the Government had shown [the defendant] uttered false statements to an investigating agent who might or might not testify before a grand jury[;]" the law "required something more" (quoting United States v. Aguilar, 515 U.S. 593, 600 (1995))); Aguilar, 515 U.S. at 601–02 (reversing a "speculative" obstruction of justice conviction because providing false statements out of court "cannot be said to have the 'natural and probable effect' of interfering with the due administration of justice," and specifically repudiating "the dissent's theory" under which "*any* act, done with the intent to 'obstruct . . . the due administration of justice,' is sufficient to impose criminal liability" (omission in original)); see also Fowler v. United States, 563 U.S. 668, 675 (2011) (construing the intent requirements of another subsection of 18 U.S.C. § 1512 to avoid "bring[ing] within the scope of this statute many instances of witness tampering in purely state investigations and proceedings, thus extending the scope of this federal statute well beyond the primarily federal area that Congress had in mind").[4]

Moreover, even setting aside the "official proceeding" analysis, the record in this case presents another problem in Goodlow's challenge to the sufficiency of the evidence on this count generally. In Count 14, Goodlow was charged with witness tampering in violation of 18 U.S.C. § 1512(c)(2) ("Whoever corruptly . . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."). The instruction on Count 14, however, told the jury it had to find two elements beyond a reasonable doubt before it could find Goodlow guilty on that Count:

> *One*, the defendant, Loren Goodlow, knowingly used intimidation, threats, or corrupt persuasion against N.S.; and . . . *Two*, Goodlow did so with the intent to influence N.S. to persuade A.S. to lie in connection with a trial of a criminal case against Goodlow.

---

[4]Because there is not sufficient evidence to show Goodlow contemplated a proceeding at all, the concern regarding whether he contemplated a *particular* proceeding, raised in the second concurrence, is not at issue here.

-11-

This instruction appears to reflect the elements of a violation of 18 U.S.C. § 1512(b)(1) ("Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding . . . shall be fined under this title or imprisoned not more than 20 years, or both."). The propriety of the jury instruction is not before us. But the text of the two statutory provisions differs, which in turn affects what the government needed to prove and whether it met its burden on each element of the offense at trial. See, e.g., Arthur Andersen, 544 U.S. at 704–07 (emphasizing the impact of the word "knowingly" on the elements of § 1512(b)). Because the evidence is not sufficient to prove Goodlow contemplated a particular official proceeding, however, we need not address any impact the differences between the two statutory provisions may have had on Goodlow's conviction on Count 14.

KOBES, Circuit Judge, concurring specially.

I agree with the concurrence in *United States v. Abdullahi,* 144 F.4th 1034, 1046–47 (8th Cir. 2025) (Stras, J., concurring in part and concurring in judgment). We have read into § 1512(c)(2) "an element that does not exist." *Id.* at 1046. The statute does not require a defendant "to *intend* to influence a federal proceeding," *id.*, and the evidence here shows that Goodlow tried to obstruct, influence, or impede an official proceeding when he asked N.S. to lie because he was worried about going to jail. That should be enough. *See* § 1512(c)(2). But it's not under *Petruk* because it does not prove that he "contemplated a *particular* proceeding" when he engaged in his obstructive conduct. *Abdullahi,* 144 F.4th at 1042.

As for the other concurring opinion, I agree "[t]he propriety of the jury instruction is not before us." *Supra* at 12. But I respectfully disagree that *Petruk* is "not at issue here." *Supra* at 11 n.4. *Petruk* is *the* issue here. Because it controls, *see Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc), I concur in the opinion of the court.

_____