# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-3501

_____

United States of America

*Plaintiff - Appellee*

v.

Gabriel White Plume, Sr.

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota
_____

Submitted: June 11, 2024
Filed: August 9, 2024
_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.
_____

GRASZ, Circuit Judge.

Gabriel White Plume, Sr., appeals his convictions for witness tampering and assault, arguing there was insufficient evidence to convict him. He also contends he was placed in double jeopardy because three of his nine charges related to the same conduct. For the reasons discussed below, we affirm the district court.[1]

_____

[1]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota.

# I. Background

At trial, the government presented evidence of a horrific sexual assault. On January 10, 2023, White Plume was drinking vodka and using methamphetamine with his girlfriend, CLS, as well as his friend, Edison Jumping Eagle. At some point, White Plume pulled off CLS's pants and "asked [Jumping Eagle] if he wanted to get some." Jumping Eagle then got on top of CLS had sex with her. While Jumping Eagle had sex with CLS, White Plume choked CLS and forced her to perform oral sex on him. At one point, White Plume forcefully struck CLS on her hip with his closed fist; he also pinned CLS down and told Jumping Eagle to insert his hand into CLS's vagina. CLS felt a sharp pain in her vagina and started bleeding nonstop. CLS testified feeling scared and hopeless because she would "get beat up" if she did not do what White Plume ordered her to do. White Plume recorded part of the incident, and those recordings were used as evidence at trial.

When CLS arrived at the hospital, she was treated as a trauma patient. She reported her pain level as 10 out of 10. A doctor testified that CLS had a "very deep 5-centimeter laceration" inside her vagina that penetrated the adjacent muscle, and that "her uterus was very red and almost had a bruised appearance." Doctors also discovered other extensive injuries on CLS, including bite marks, cigarette burn marks, and deep bruising all over her body. CLS testified that White Plume had used a cigarette to burn her arm, and that he had beat her up both before and after the incident, causing deep bruises throughout her body.

A federal grand jury indicted White Plume for nine counts of sexual assault, assault, witness tampering, and distribution of a controlled substance. A jury

convicted White Plume of eight of the nine counts.[2]  The district court sentenced White Plume to 480 months of imprisonment.[3]

## II.  Analysis

White Plume appeals, arguing insufficiency of the evidence to convict him of Witness Tampering (Count 6) and Assault (Count 7).  He also contends he was placed under double jeopardy for the charges against him for Aggravated Sexual Abuse (Count 2), Assault Resulting in Serious Bodily Injury (Count 3), and Aiding and Abetting Sexual Abuse (Count 9).  We address each issue below.

### A.  Motion for Judgement of Acquittal

"We review the denial of a motion for judgment of acquittal *de novo*, viewing the evidence and all reasonable inferences in the light most favorable to the jury's verdict."  *United States v. McDonald*, 826 F.3d 1066, 1072 (8th Cir. 2016).  "We will direct a judgment of acquittal only when no reasonable jury could have found the defendant guilty beyond a reasonable doubt."  *Id.*

### 1.  Witness Tampering

The district court denied White Plume's post-trial motion for a judgment of acquittal for Count 6, noting sufficient evidence showed White Plume attempted to persuade CLS to recant her statements as to all counts.

18 U.S.C. § 1512(c)(2) of the witness tampering statute "makes it a crime to corruptly 'obstruct, influence, or impede any official proceeding, or attempt to do

---

[2]White Plume was convicted of Counts 2 through 9.  He was acquitted of Count 1, which charged White Plume with forcing CLS to perform oral sex on him.

[3]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

so.'" *United States v. Petruk*, 781 F.3d 438, 444 (8th Cir. 2015) (alterations omitted). To prove witness tampering, "the government must establish two elements: first, that [the defendant] knowingly engaged in corrupt persuasion and second, that the acts of corrupt persuasion were intended to influence the testimony of another in an official proceeding . . . ." *United States v. Craft*, 478 F.3d 899, 900 (8th Cir. 2007). To "corruptly" persuade or influence another "means to act 'with consciousness of wrongdoing.'" *United States v. Bird*, 76 F.4th 758, 762 (8th Cir. 2023) (quoting *Craft*, 478 F.3d at 901) (addressing "corruptly" mens rea in the context of § 1512).

Here, ample evidence at trial showed White Plume acted with consciousness of wrongdoing to prevent CLS from testifying against him. He attempted to prevent CLS's testimony via multiple channels—both through his daughter and through CLS directly.

First, White Plume directed his daughter to communicate with CLS. On February 27, 2023, White Plume messaged his daughter, instructing her to "message [CLS] and tell her to hurry up and get that shit done . . . ." His daughter replied, "Okay." About an hour later, his daughter messaged White Plume: "Dad she asked what she needs to get done," and White Plume responded, "[t]ell her to message me." His daughter then confirmed, "I did."

At trial, CLS testified that she received messages from White Plume's daughter asking her to "drop the charges" and stating that White Plume himself was trying to get ahold of her. Viewing these facts in the light most favorable to the guilty witness tampering verdict, a reasonable jury could determine that White Plume asked CLS to refuse to cooperate with law enforcement or he wanted to speak with CLS to convince her not to cooperate, and he used his daughter to communicate the same to CLS. *See Bird*, 76 F.4th at 762 (upholding a witness tampering conviction when the defendant "repeatedly ask[ed] his own mother . . . to have the victim recant the allegation").

Second, White Plume attempted to directly persuade or influence CLS not to cooperate with law enforcement. On February 28, presumably after White Plume's daughter messaged her, CLS messaged White Plume, "[w]hat do you want me to do[?]" White Plume asked CLS to "send me your number so I could call you," after which CLS sent her number. Soon after, White Plume complained to CLS, "damn man I almost fucking gave up man what the fuck man." In two responses, CLS stated, "[y]ou did this to us," and "[y]ou almost killed me." White Plume responded, "I love you I always did always will" and "I'm fucking struggling man and I need help." White Plume went on begging CLS to "please help me please." Viewing these facts in the light most favorable to the guilty witness tampering verdict, a reasonable jury could believe that White Plume reached out to CLS to persuade or influence her to "help" him by not cooperating with law enforcement. *See United States v. Richardson*, 92 F.4th 728, 730–31 (8th Cir. 2024) (upholding a witness tampering conviction when, for example, the defendant called the victim and "began by professing his love for her and then insisted that she 'say nothing' because he was 'fighting the case'").

Given the evidence pertaining to White Plume's contact with his daughter about CLS and his direct contact with CLS, "the government produced sufficient evidence to prove that [White Plume] acted with consciousness of wrongdoing and intended to influence [CLS's] testimony." *See Craft*, 478 F.3d at 901. This evidence is easily sufficient to support the jury's verdict.

## 2. Assault

White Plume also filed a post-trial motion for a judgment of acquittal on Count 7 (Assault Resulting in Substantial Bodily Injury) on the basis there was insufficient evidence. The district court denied White Plume's motion, concluding the evidence of the victim's substantial bruising was "sufficient to be considered 'a substantial disfigurement' within the meaning of 18 U.S.C. § 113(b)(1)." We agree with the district court.

"[S]ubstantial bodily injury" means bodily injury that involves "(A) a temporary but substantial disfigurement; or (B) a temporary but substantial loss or impairment of the functions of any bodily member, organ, or mental faculty." § 113(b)(1).

During the trial, the government argued CLS sustained a temporary but substantial disfigurement because she had intensive bruising caused by White Plume. On appeal, White Plume argues the evidence was insufficient to establish he caused such disfigurement because expert testimony suggested the bruises were "of different ages and not within the time period of the charges within the case." For example, he argues "[t]here was no testimony presented at trial to indicate when these bruises were obtained by C.L.S., whether they were the result of the same incident or different incidents, [or] whether they were all caused by [White Plume]." However, "[w]hen reviewing a district court's denial of a motion for judgment of acquittal, we 'do not weigh the evidence or assess the credibility of witnesses; that is the province of the jury.'" *McDonald*, 826 F.3d at 1073 (quoting *United States v. White*, 794 F.3d 913, 918 (8th Cir. 2015)). "Even when the evidence rationally supports two conflicting hypotheses, we will not disturb the conviction." *Id*. Rather, viewing the evidence in the light most favorable to the verdict, video evidence and CLS's own testimony suggest White Plume caused CLS's injuries.

## B. Double Jeopardy

We next consider White Plume's double jeopardy arguments, which, because he did not raise below, we review under the plain error standard. *United States v. Sickinger*, 179 F.3d 1091, 1092–93 (8th Cir. 1999); *see also United States v. Jackson*, 155 F.3d 942, 947 (8th Cir. 1998). "Plain error review is . . . limited to those errors which are so obvious or otherwise flawed as to seriously undermine the fairness, integrity, or public reputation of judicial proceedings." *United States v. Beck*, 250 F.3d 1163, 1166 (8th Cir. 2001). "Therefore, this court will affirm the conviction unless (1) the district court made an error, (2) the error was plain under current law, meaning clear and obvious, and (3) the error was prejudicial and

affected the trial outcome," and we will correct that error only if it results in a miscarriage of justice. *Jackson*, 155 F.3d at 947.

"The Double Jeopardy Clause of the Constitution 'protects against multiple punishments for the same offense.'" *United States v. Fool Bear*, 903 F.3d 704, 707 (8th Cir. 2018) (quoting *United States v. Anderson*, 783 F.3d 727, 738–39 (8th Cir. 2015)). An indictment violates the Double Jeopardy Clause when multiple "offenses charged are in law and fact the same offense." *United States v. Two Elk*, 536 F.3d 890, 898 (8th Cir. 2008) (quoting *United States v. Roy*, 408 F.3d 484, 491 (8th Cir. 2005)). Under the so-called "*Blockburger* test," "a double jeopardy challenge necessarily fails" if "each offense requires proof of an element not required by the other[.]" *United States v. Sandstrom*, 594 F.3d 634, 654 (8th Cir. 2010) (quoting *United States v. Gamboa*, 439 F.3d 796, 809 (8th Cir. 2006)); *see also Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[T]he test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."). "[T]he *Blockburger* test focuses on the statutory elements of the offenses, rather than the evidence presented at trial." *Sandstrom*, 594 F.3d at 654 (quoting *Gamboa*, 439 F.3d at 809).

Here, White Plume contends he "was punished three times for the [same] conduct of sexual assault" when the government charged him for Aggravated Sexual Abuse (Count 2), Assault Resulting in Serious Bodily Injury (Count 3) and Aiding and Abetting Sexual Abuse (Count 9). But, as discussed below, each of these charged offenses requires proof of an element not required by the other two; therefore, White Plume's double jeopardy challenge necessarily fails.

For example, White Plume's Aggravated Sexual Abuse charge (Count 2) required that he "engage in a sexual act" with the victim, "with the intent to abuse, humiliate, harass, degrade and arouse, . . . by the use of force[.]" A sexual act by "the use of force" is not required for the charges of Assault Resulting in Serious Bodily Injury (Count 3) nor Aiding and Abetting Sexual Abuse (Count 9).

-7-

Similarly, White Plume's Assault Resulting in Serious Bodily Injury charge (Count 3) required that he "assault" the victim, "resulting in serious bodily injury" to the victim. An "assault" is not required under Count 2 nor Count 9.

Finally, White Plume's Aiding and Abetting Sexual Abuse charge (Count 9) required that he "engage in the sexual act" with the victim, at a time when the victim "was incapable of appraising the nature of the conduct and was physically incapable of declining participation in and communicating unwillingness to engage in the sexual act[.]" And this charge further required him to "know [the victim] was so incapacitated[.]" The victim's incapability of appraising the nature of the conduct and declining participation in the sexual act is not required under Counts 2 and 3. Further, the defendant's knowledge of the victim's incapacity is also unnecessary under Counts 2 and 3.

In sum, White Plume's double jeopardy challenge fails because each charged offense required proof of an element not required by the other two. *See Two Elk*, 536 F.3d at 898. Hence, the offenses of Aggravated Sexual Abuse, Assault Resulting in Serious Bodily Injury, and Aiding and Abetting Sexual Abuse are different offenses under the double jeopardy analysis.

### III. Conclusion

For the foregoing reasons, we affirm the district court's judgment.

_____