# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-2288
_____

United States of America

*Plaintiff - Appellee*

v.

Richard Garza

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: October 20, 2025
Filed: December 9, 2025
[Published]
_____

Before COLLOTON, Chief Judge, LOKEN and BENTON, Circuit Judges.
_____

PER CURIAM.

A jury convicted Richard G. Garza of tampering with a witness, in violation of 18 U.S.C. § 1512(b)(1) and 1512(j). The district court[1] sentenced him to 66

---

[1]The Honorable John M. Gerrard, United States District Court Judge for the District of Nebraska.

months in prison. He appeals his conviction. Having jurisdiction under, 28 U.S.C. § 1291, this court affirms.

Garza argues the evidence was insufficient to convict him of attempting to persuade Katrina Coffman to testify falsely on his behalf. The district court denied Garza's motion for judgment of acquittal on this ground. This court reviews "the denial of a motion for judgment of acquittal *de novo*, viewing the evidence and all reasonable inferences in the light most favorable to the jury's verdict." *United States v. Plume*, 110 F.4th 1130, 1133 (8th Cir. 2024). A judgment of acquittal is appropriate "only when no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id*.

In March 2022, a federal indictment charged Garza with one count of conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). In April 2023, a superseding indictment added two new counts of witness tampering. One of those counts charged:

> On or between about May 6, 2022, and June 29, 2022, in the District of Nebraska, RICHARD GARZA, the defendant herein, did corruptly persuade or attempt to corruptly persuade K.C. with the intent to influence the testimony of K.C. in the trial of a criminal case.
>
> In violation of Title 18 United States Code, Sections 1512(b)(l) and 1521(j).[2]

The jury heard substantial evidence of Garza's attempt to influence Coffman's testimony. Coffman testified for the government at trial. Before they were both incarcerated, Coffman met Garza through Jaesa Vaughn and her father Roger, both of whom sold drugs with Garza. After Coffman and Garza were incarcerated, she received a letter from him thanking her "for not lying on him." They began to

---

[2]There was an error in the indictment, listing a violation of 18 U.S.C. § 1521(j) rather than 18 U.S.C. § 1512(j).

communicate with each other through a "chirp" account, a text messaging service for inmates.  In these messages, Garza offered to help Coffman:

> If I get out after my trial I promise you I will do everything I can to help you and your family, including your husband if he accepts my friendship.

****

> There is a lot I would like to talk about w/ you but under these circumstances its difficult and I know you understand me.  For now we'll play it safe and wait.

****

> Ok thank you so much and I am forever grateful to you.  Im still gonna try to put money on your chirp bcs I know how it is when you want or need to text.

****

> I wish I could transfer from mine bcs I have 100 but either way you'll have me as your friend forever and I will do everything and anything to help you.

Coffman testified that Garza said he would have his brother transfer money into her "chirp" account and that he talked about wanting to transfer money from his account to hers.  Garza allowed Coffman to use his phone account for free.  In one message he said: "Ok you forgot to tell me your lawyers name and if you need to use my phone u can I have like 20 bucks on it its 6547 #4263 and you can use it all I have more."  A few days later he said:  "Dont worry about using phone time, that's what it's for I hardly use it, and when it runs out ill put more."  He bought commissary items for her, saying:  "Tomorrow i get more commissary ill see or figure out how to send my niece some food lol . . . I have right now 2 soups a beef and cheese stick and a cocoa drink and tea for u right now but dont know how to get it to you bcs this shift is scary besides."

In many messages to Coffman, he reminded her of the favors he provided:

They are pointing the finger on me of what i did in the 1990's im doing w/ all of that dont understand it but God knows why.  I guess my cuz did anything.

\*\*\*\*

And everything to get time off and they plotted against me to make themselves look good.  But oh now i got you to expose them and i hope the judge sees that.

\*\*\*\*

Take care sobrina and i hope you enjoy what i sent you and hope to meet you one day.  Take care of your family, stay in touch w/ them you got phone time tomorrow.

\*\*\*\*

Ill send the other stuff i ordered for you.  Let me know what happens and stay in touch.  I cant wait to go back to work, im a work aholic cant stand this.

When asked what she understood Garza expected in return for these favors, Coffman testified, "To basically lie for him."  She understood he wanted her to contradict the testimony of Roger and Jaesa about his involvement in selling drugs.

Q. Did he want you testify for him in this case?
A. Yes.
Q. And did he ask you to testify on his behalf?
A. Yes.
Q. And did he ask you to lie about some information?
A. He didn't ask me to lie about no information.
Q. But did he ask you to tell the jury that other people had lied about information?
A. Yes.

-4-

Q. And would that be Roger and Jaesa?

A. Yes.

Q. And the information that he wanted you to talk about, was it information that you had any independent knowledge of?

A. No.

Q. Okay. Did he want you to say that things that Roger and Jaesa had said about him, Mr. Garza, were lies?

A. Yes.

Q. But you would have no independent knowledge of that; is that fair?

A. Right.

Q. Did Mr. Garza ask you to say you were the only source for Roger Vaughn?

A. No.

Q. Did he ask you to say that you were one of Roger Vaughn's sources?

A. Yes.

Q. And that Mr. Garza was not?

A. Yes.

Q. Now, you didn't know independently whether Mr. Garza was a source for Roger Vaughn or not, did you?

A. Correct.

Q. So that wasn't something you could actually truthfully testify about?

A. Right.

Garza also asked Coffman to contact her lawyer saying she wanted to testify on his behalf. Garza told her what to say, maintaining that Roger and Jaesa were lying about their involvement with him:

My atty is setting that up, you are going to testify on my behalf from what I understand. My atty will be here this weekend, youll see me pass by ill know 4sho.

****

As far as I know you are bcs I need you to tell them the truth, you know first hand that they set me up bcs they want time off their sentence and you my witness.

In other conversations, Garza said that he had told his attorney that Coffman would provide testimony helpful to his case:

Went well with my visit he will be here again tomorrow and he will contact your atty and wonders if you got anything helpful that would be helpful for me I said.

\*\*\*\*

Yes she knows about Rog and J lying about me to get time off their sentence so my atty said he will contact your atty.

\*\*\*\*

He question me about what can you give them that would be helpful to me? I said I dont know but if I was a drug dealer I would be worried and since im not she.

\*\*\*\*

Would know weather I am or not so im sure anything she says wiuld be helpful to me. And refering about you. If i was a plug im sure you would know right???

As trial got closer, he continued to pressure her to testify:

If i get convicted bcs of her dumb ass you know ill be gone for life? Im 59 years old they will hammer me for min 30 years im fighting for my life I beed you to.

\*\*\*\*

I need you to call your atty and volunteer to testify on my behalf call him pls.

\*\*\*\*

Mija you need to call your atty and tell him you want to talk to Brett McArthur my atty you have to volunteer yourself c'mon girl i need you.

****

You can use my phone if you want to call your family. I know how important it is to stay in touch. Have you called your atty? Pls do I need all the helpi canget.

The jury heard other evidence about Garza's attempt to influence Coffman. But, as the district court found, her testimony alone was sufficient:

> There is certainly evidence that the defendant provided favors for Coffman—testimony that he gave her money, bought things for her, and let her use his phone account, for instance. Filing 148 at 55; filing 152 at 13-14; filing 157 at 23. Coffman also testified that the defendant told her that if he beat his case, he would stay in touch with her, they would "stay friends," and he would keep helping her. Filing 157 at 23.

> And Coffman said her understanding was that the defendant wanted her to lie for him. Filing 157 at 23-24. Specifically, she said that he wanted her to testify that Roger and Jaesa Vaughn were lying about him—even though she didn't know whether they were lying or not. *See* filing 157 at 23-25. The defendant insists that

>> no evidence disproves [his] position he thought Coffman could provide helpful, truthful testimony at trial, to wit: that Jaesa and Roger Vaughn fabricated testimony to cut their sentence, both against Coffman and against [the defendant], who denies criminal involvement with the Vaughns.

> Filing 181 at 3. The jury could certainly have found that. But the jury could *also* have found that the Vaughns testified truthfully and that the defendant knew, when he asked Coffman to testify to the contrary, he was asking her to lie. And the jury could also have found that the defendant was asking Coffman to testify that she knew the Vaughns were lying, even though he was aware that she really didn't know one

way or the other.  Either theory supports the verdict.  Simply put, *Coffman* testified that she thought the defendant was asking her to lie.  The jury was entitled to believe her, and equally entitled to believe that her understanding of the situation was correct.

To prove witness tampering, the government must prove: (1) the defendant "knowingly engaged in corrupt persuasion;" and (2) "that the acts of corrupt persuasion were intended to influence the testimony of another in an official proceeding."  *United States v. Craft*, 478 F.3d 899, 900 (8th Cir. 2007).  To "'corruptly persuade' another means to act 'with consciousness of wrongdoing.'"  *United States v. Bird*, 76 F.4th 758, 762 (8th Cir. 2023), *quoting Craft*, 478 F.3d at 901).  Testimony of the witness and text messages are sufficient to convict of witness tampering.  *See Plume*, 110 F.4th 1130, 1133-34; *United States v. Richardson*, 92 F.4th 728, 731-32 (8th Cir. 2024).

Garza claims there was insufficient evidence to support his conviction because he only asked Coffman to testify truthfully.  This is not true.  Garza told Coffman she needed to testify she had first-hand knowledge that he was not involved in drug distribution with Roger and Jaesa.  Coffman testified that she had no such first-hand knowledge.  Garza's text message communications to Coffman show his "consciousness of wrongdoing."  His messages were intended to affect the outcome of his trial.  The district court did not err in denying his motion for judgment of acquittal.

\* \* \* \* \* \*

The judgment is affirmed.

_____